**UNITED STATES of America,
Plaintiff,**

v.

**Joseph Harry BLOCK, Defendant.**

United States District Court
S. D. New York.
Feb. 23, 1962.

Robert M. Morgenthau, U. S. Atty. Southern District of New York, New York City, Edward R. Cunniffe, Jr., Asst. U. S. Atty., New York City, of counsel, for plaintiff.

Julius Paull, New York City, for defendant.

METZNER, District Judge.

Defendant moves to suppress the use of certain merchandise as evidence which it is claimed was obtained as the result of an unlawful search and seizure. The motion also seeks the dismissal of the indictment on the ground that it could only have been based upon evidence obtained as the result of an unlawful search and seizure.

The indictment charges the defendant Block with unlawfully, willingly and knowingly having in his possession certain textiles, knowing the same to have been embezzled and stolen from a motor truck while they were moving as part of an interstate shipment (18 U.S.C. § 659).

Block was in the business of selling textile remnants. He had leased a store and basement for this purpose at 470 Broadway. For about two weeks prior to July 14, 1959, Block had been vacationing in Florida with his wife and had left his sole employee, Charles Diaz, in charge of the premises. During the morning of July 14th, several agents of the FBI were stationed near 470 Broadway. A truck drove up and the driver spoke to a man who thereafter went into Block's store. The driver then unloaded cartons onto the sidewalk, and Diaz, with the help of two other people, moved the cartons into the store. The cartons were not addressed to 470 Broadway. The agents spoke to the driver, who told them that he had stolen the merchandise earlier in the day and had sold it to an unknown man who told him to unload the cartons at 470 Broadway. The agents and the driver then went into the store to find out why the merchandise had been delivered to 470 Broadway.

The store was about 100 feet deep and 22 feet wide, with a stairway near the rear of the premises, leading to the basement. In answer to the agent's inquiry, Diaz said he was in charge of the store and pointed to cartons on the floor of the store as being the ones that were brought in from the truck. He had received no papers in connection with this shipment, but said that he frequently got merchandise without papers.

One of the agents told Diaz that he was interested in determining the origin of goods in the store that came in without labels or papers, or goods from which the labels were removed. Diaz said that such goods could be found in the basement, and Diaz also said he had no objection to the agent's searching the premises. Diaz was not told that he did not have to let the agent go into the basement.

The driver was placed under arrest while he was in the store with the agents, and Diaz was aware of this fact. The agent searched the basement and found rolls of merchandise, but none of it belonged to the delivery that was made that morning. This merchandise was removed by the agents and is the subject matter of the indictment against the defendant Block.

At the time the agent searched the basement, he did not know that it contained identifiable stolen merchandise.

Diaz was about 20 years old at the time and had completed only two years of high school. He had gone to work for the defendant about five months before this incident. His salary was $55 a week. His duties consisted of keeping the store clean, unloading shipments coming in and packing those going out, and doing the work of a general handyman. He knew the price of some of the merchandise that was sold to customers who came in off the street, simply because he had heard his employer quote prices. However, in the main, he would have to ask his employer the price of specific merchandise. While Diaz could quote prices to a customer, he was not allowed to sell merchandise. Diaz had a set of keys which he rarely used, because Block usually opened the store. When Block went to Florida, he gave Diaz's keys to Ben Raymond, who owned a store across the street, and who opened the store for Diaz each morning and closed it when Diaz left.

The question presented is whether the search of the basement conducted by the agent and the seizure of the goods therein, without a search warrant, was unlawful.

This is not the case of a search in connection with a lawful arrest. See Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145 (1925). Such a search is valid in connection with a lawful arrest where the premises are under the control of the person arrested. United States v. Rabinowitz, 339 U.S. 56, 61, 70 S.Ct. 430, 94 L.Ed. 653 (1950). Here the driver of the truck did not have control of the premises, and the goods which he had unloaded onto the sidewalk were identified on the floor of the store by Diaz.

It is a little difficult to ascertain the precise boundaries attempted to be

drawn by the Court in relation to the right of a person to be secure "against unreasonable searches and seizures" as provided by the fourth amendment to the Constitution. In Carroll v. United States, 267 U.S. 132, 147, 45 S.Ct. 280, 283, 69 L.Ed. 543 (1925) the Court said:

> "The Fourth Amendment does not denounce all searches or seizures, but only such as are unreasonable."

In Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948) the Court indicated that a search and seizure is unreasonable when made without a warrant when it would be practicable to have obtained one. Then, in United States v. Rabinowitz, supra, the Court expressly overruled the Trupiano case and said:

> "The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable." (339 U.S. at 66, 70 S.Ct. at 435).

Finally, in the case of Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961) the Court seems to have returned to the Trupiano rule without the majority's even mentioning that case, or the fact that it had been overruled by Rabinowitz. The Court quotes extensively from two of its prior decisions, Taylor v. United States, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951 (1932) and Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). On the necessity of obtaining a search warrant, the Court in the Taylor case, supra, said:

> "[T]here was no probability of material change in the situation during the time necessary to secure such warrant. Moreover, a short period of watching would have prevented any such possibility." (286 U.S. at 6, 52 S.Ct. at 467).

In the Johnson case, supra, the Court said:

> "No reason is offered for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a magistrate. These are never very convincing reasons and, in these circumstances, certainly are not enough to by-pass the constitutional requirement. No suspect was fleeing or likely to take flight. The search was of permanent premises, not of a movable vehicle. No evidence or contraband was threatened with removal or destruction, except perhaps the fumes which we suppose in time will disappear." (333 U.S. at 15, 68 S.Ct. at 369.)

■ I take the rule now to be that, absent exceptional circumstances, a search not in connection with a lawful arrest may not be made without a warrant.

■ The events in the case at bar occurred at about 11 o'clock in the morning. 470 Broadway is not more than a ten-minute walk from the Courthouse, and only a couple of minutes by car. In the circumstances, a search warrant was necessary unless it can be found that defendant's constitutional protection has been effectively waived by Diaz.

■ Taking into consideration Diaz's age, experience, responsibilities and activities in the store on July 14, 1959, it cannot be held that defendant's constitutional rights have been waived by the consent given by Diaz. As has been reiterated so many times, the application of the fourth amendment depends so much on the particular facts of the case under consideration that the citation of authority on this point would not be helpful.

The motion to suppress the evidence is granted.

■ The motion to dismiss the indictment is denied, because the court cannot speculate upon the nature and quality of the evidence presented to the grand jury. Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956).

So ordered.