**UNITED STATES of America,**
**Plaintiff,**

v.

**Bruce BARTON, Defendant.**
**Cr. A. No. 65–148.**

United States District Court
D. Massachusetts.
May 23, 1967.

Paul F. Markham, U. S. Atty., and William J. Koen and Stanislaw R. J. Suchecki, Asst. U. S. Attys., for plaintiff.

Bernard J. Dwyer, Boston, Mass., for defendant.

## OPINION

JULIAN, District Judge.

The defendant has moved to suppress evidence under Rule 41(e) of the Fed eral Rules of Criminal Procedure.

The defendant was indicted for unlawful possession of a check which had been contained in an envelope allegedly stolen from the mail. By this motion he seeks to have suppressed as evidence the envelope and the check, which he claims were obtained from his automobile on February 13, 1965, as the result of an unlawful search and seizure, as well as all other evidence, whether oral or physical, obtained as a result of such seizure. The check was in the amount of $5,180.-78, made out to the order of the Kingston Press from Dickie-Raymond, Inc.

On the evidence presented at the hearing on the motion, I find that in execution of an arrest warrant issued by the Chelsea District Court, three officers of the Chelsea Police Department went to an apartment at 5 Albion Place in Chelsea. Officers Keating and Sweeney entered the front door and Officer Smith stationed himself at the rear door. Keating found the defendant hiding in a closet and made the arrest. The defendant was frisked for a weapon, but nothing was taken from him. He was handcuffed and taken out the back door by Smith and placed in the back seat of a police car. Smith drove the car and Keating rode in the back seat with the defendant. The defendant asked the officers to drive by his car, which was parked around the block, so that he could get some of his clothing out of the trunk. He stated that he was afraid his car would be towed away or repossessed. Smith drove the car around the block and stopped beside the defendant's car. A second police car had been parked directly ahead of the defendant's car.

Keating asked the defendant if the trunk was open, and he replied that it was, because the lock did not work. Officer Moore, also present at the scene, asked the defendant if it would be all right if he looked through the defendant's car. The defendant told him to go ahead, stating that there was nothing in the car to be found anyway. So far, none of the officers had advised the defendant of any of his constitutional rights. Smith and Moore went to the defendant's car, entered it and searched it. The trunk was also opened and Smith took from it a carton containing articles of clothing belonging to the defendant. Smith brought the carton to the police car.

Smith then drove the defendant to the Chelsea Police Station where he was booked. After the booking the defend-

ant signed a mimeographed statement which read:

"Forthwith upon arrival of the above named prisoner, I informed him of his rights to the use of a telephone at his own expense, to communicate with his family or friends, or to arrange for release on bail, or to engage the services of an attorney; and I permitted such use within an hour therefrom.

"Said prisoner did . . X . . use the telephone at about ⎯⎯5.15 p. m.⎯⎯ time

In the last sentence the "X" and the "5.15 p. m." were typed in.

There is no evidence that the defendant was ever given any additional information about his rights.

The defendant was then taken upstairs to an interrogation room. Smith testified that he found the carton above referred to on a table in that upstairs room. Neither he nor any other witness had any knowledge or memory of how or by whom it had been brought upstairs or placed on the table, or whether anything had been taken out of it or placed in it from the time it was taken out of the trunk of the car. Smith testified that in searching through the clothing he found the check. He did not recall whether the check was in a pocket of any of the clothing or merely lying loose among the clothing.

I find that the check was taken by the police from the defendant's car. I am not satisfied that it was first discovered at the police station when Smith searched through the defendant's clothing contained in the carton, or that it was in fact in the carton when the carton was taken from the car.

Because of the vagueness of Smith's testimony and of his repeated claim of inability to remember things about the case that he reasonably could be expected to know and to remember, I find his testimony less than persuasive.

When questioned at the police station about the check the defendant made a statement to the effect that he had gone to the premises of Dickie-Raymond, Inc., looking for a job. When he saw the envelope containing the check there, he took it.

The defendant was thereafter indicted for unlawful possession of the check, knowing the same to have been stolen from the mails.

■■ The contention of the government is that the check was contained in the carton of clothing in the trunk of the defendant's car, and that the defendant gave his permission to the officers to remove that carton from the trunk. On a motion to suppress, the burden is upon the government to prove that the defendant voluntarily consented to the entry and search of his automobile by the police and the removal of articles from it.[1] Wren v. United States, 1965, 10 Cir., 352 F.2d 617, 618, cert. denied, 384 U.S. 944, 86 S.Ct. 1469, 16 L.Ed.2d 542.

■ It has been held that "the government's burden is greater when consent is claimed to have been given while the defendant is under arrest." Burke v. United States, 1 Cir., 1964, 328 F.2d 399, 402, cert. denied, 379 U.S. 849, 85 S.Ct. 91, 13 L.Ed.2d 815, quoting United States v. Page, 9 Cir., 1962, 302 F.2d 81, 84.

■ As was stated in the case of Wren v. United States, supra 352 F.2d at 618,

"In order to constitute a voluntary consent it must clearly appear that the search was voluntarily permitted or expressly invited and agreed to by the person whose right is involved. In addition, such person must be cognizant of his rights in the premises, the consent must not be contaminated by any duress or coercion * * *."

■ I find that the government has not sustained its burden of proving that the defendant voluntarily and knowingly

---

1. It has been clearly established that automobiles are protected from unreasonable searches. Weller v. Russell, 1963, 3 Cir., 321 F.2d 848, 854.

consented to the search of his automobile which led to the discovery and seizure of the check. This finding is based on the following combination of circumstances:

1) The defendant was arrested and handcuffed and placed in a police car by two officers.

2) He requested that he be taken to his car so that *he* might get clothing from the trunk, anticipating that his car would be towed away.

3) At the time that he was asked if the police could look through his car he had not been advised of any of his constitutional rights regarding self-incrimination or advice of counsel. There is no indication that he was aware of his right to refuse his consent to a search of the car under the Fourth Amendment.

Under these circumstances it has not been established that the defendant gave the unequivocal, specific, and intelligent consent to the search of his automobile that would be necessary to constitute a waiver of his constitutional right. United States v. Thompson, 1965, 2 Cir., 356 F.2d 216, 220, cert. denied, 384 U.S. 964, 86 S.Ct. 1591, 16 L.Ed.2d 675.

Although there was testimony that after Smith got the carton from the trunk of the defendant's car he placed it in the lap of the handcuffed defendant in the back seat of the police car, I find that the carton and its contents were in the exclusive custody and control of the police from the time it was taken from the trunk to the time it was emptied and searched in the interrogation room of the police station.

Furthermore, no witness was able to testify as to who carried the box from the car to the second floor interrogation room, and therefore no witness could or did state that nothing was taken from or added to the contents of the box during that period. The government nei-

ther produced nor explained the absence of Moore, the officer who asked permission to search the car and did in fact search it.

■ If in fact the check was found in the carton, I find and rule that the seizure of the carton and its contents could not be justified as a search incident to an arrest. At the time of the arrest the defendant was in an apartment a block away from where his car was parked. The police later seized the carton from the trunk of the defendant's car while the defendant was sitting in another car. This seizure was too remote from the immediate presence of the arrested defendant to qualify as incident to an arrest. Neither could the subsequent search of the box at the police station be justified as incident to an arrest. Preston v. United States, 1964, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777.

■ Finally, this is not a case in which the police found it necessary to forgo the procedure of obtaining a search warrant before searching an automobile because of its imminent mobility. At the time of the arrest the defendant was a block away from the car and the second police car was effectively blocking its path. There was no immediacy about the situation which would have prevented the police from obtaining a search warrant. United States v. Stoffey, 1960, 7 Cir., 279 F.2d 924.

I find that the check in question was seized by the police officers in the course of their search of the defendant's car which was not incident to his arrest, and that it was made without a search warrant, and without the defendant's consent lawfully obtained.

Therefore, the defendant's motion to suppress as evidence the check and envelope and all evidence that was obtained as a result of their seizure, is granted.[2]

---

2. The government has not established in what manner, if at all, the envelope came into its possession. The question is moot, however, in that the government has represented that it is not now in possession of the envelope and has no knowledge of its whereabouts.