**UNITED STATES of America,
Plaintiff,**

v.

**King Gayle SHROPSHIRE, Charles Leon
Garner and Wanda Faye Meeks,
Defendants.**

**No. CR 30877.**

United States District Court
E. D. Louisiana,
New Orleans Division.

July 31, 1967.

Frederick W. Veters, Asst. U. S. Atty., New Orleans, La., for plaintiff.

Milton P. Masinter, New Orleans, La., for Shropshire.

G. Wray Gill, New Orleans, La., for Meeks and Garner.

## ON MOTION TO SUPPRESS

CASSIBRY, District Judge:

This cause came before the Court on a motion by defendants to suppress evidence on grounds it was obtained through an illegal search and seizure in violation of their constitutional rights under the Fourth Amendment to the United States Constitution.

All three defendants are charged with violation of 18 U.S.C. § 472, possession of counterfeit notes. The counterfeit notes are the evidence which defendants seek to suppress.

At approximately 4:00 A.M. on April 10, 1967, Sergeant Bernard Flint of the New Orleans Police Department received information that a man in a bar at 225 Bourbon Street was carrying a concealed weapon. When the man, who eventually proved to be the defendant Garner, exited from the bar a short time later he was placed under arrest by Sergeant Flint in company with another officer. A search of Garner incidental to the arrest, turned up a loaded, .32 caliber, snub nosed revolver with the serial number filed off, and a key to room 304 in the Downtowner Motel located about three blocks away on Bourbon Street. Sergeant Flint testified that he found fresh "track marks" on Garner's left arm indicative of recent narcotic injections; Garner denied this. At the time of his arrest, Garner had been drinking heavily for several hours. After allegedly being advised of his constitutional rights, Garner was placed in a police car and questioned about the key to the motel room. He gave the officers conflicting answers as to whether the room was his, then signed a hand written form consenting to a search of the room. Sergeant Flint testified that he wanted to search the room immediately without the delay involved in obtaining a search warrant because of the

possibility of there being someone injured in the room in need of help. Further, he expected to find narcotics or fruits of some crime in the room. On the way to the motel, Sergeant Flint radioed for assistance and was met at the motel by two additional officers. All the officers were in plain clothes. On arrival at the motel, Sergeant Flint contacted the motel security guard. The officers and the guard checked the registration files and discovered that room 304 was registered in the name of defendant King Shropshire. The four officers, the guard and Garner then proceeded to the room. They tried to open the door with the key, but because of an inside safety latch the door did not open. The door was then knocked on and defendant Shropshire from inside asked who was there. Garner answered, "It's Charlie." Whether this answer was voluntarily given, or coerced by the police is in dispute. Shropshire, dressed only in his shorts, then opened the door. At this time, defendant Meeks was in bed dressed in a nightgown. The testimony on what occurred after the door was opened is in hopeless conflict. The police testified that they showed Shropshire their credentials, informed him of their purpose in being there and requested permission to search the room. They contend they also advised him of his right to refuse them permission. Shropshire allegedly granted permission to search saying, "Go right ahead, everything is all right." The defendants all testified that as soon as the door was opened, the police all pushed into the room and some began to search immediately while Sergeant Flint talked with Shropshire. The search uncovered a number of counterfeit twenty dollar bills. When the counterfeit bills were found, Shropshire and Meeks were placed under arrest. They were advised of their constitutional rights at this time. Shropshire, who acted as spokesman for the group, then said he would have nothing to say until he spoke to an attorney. Shropshire and Miss Meeks were then told to get dressed. Further search of

the room revealed a narcotics kit which, on later examination, showed no traces of narcotics. After Shropshire and Miss Meeks were dressed they were searched. A counterfeit note was found in Shropshire's pants pocket and more counterfeit notes were found in Miss Meeks' clothing and in her purse. All defendants were then taken to the central police lockup and booked.

Since the search of the motel room was remote from the place of arrest of Garner it cannot be justified as incidential to Garner's arrest. United States v. Scott, 149 F.Supp. 837 (D.C. D.C.1957). Even assuming that Garner was a joint occupant of the motel room who could legally consent to its search (even though the room was not registered in his name), there arises the question of whether his written consent was free and voluntary. Garner testified that he signed the consent form because he was scared. He had been drinking heavily for hours and must have been intoxicated to some degree. He was summarily arrested as he left a bar, searched and placed in a police car. A court will view with caution and misgiving any search based on consent given after arrest and under circumstances indicating use of intimidation or coercion of any kind and will indulge every reasonable presumption against waiver. Wion v. United States, 10 Cir., 325 F.2d 420, cert. den. 377 U.S. 946, 84 S.Ct. 1354, 12 L.Ed.2d 309. Considering the totality of circumstances under which Garner signed the consent to search form, this Court concludes that the consent to search was not freely and voluntarily given and thus could not validate the ensuing search.

This brings us to the question of whether the search was validated by consent to search given by Shropshire. Since the room was registered in his name, he had the capacity to waive the constitutional protection against warrantless searches. The testimony as to whether Shropshire voluntarily consented to the search was in conflict. How-

ever, even if the issue of credibility is decided in favor of the government's witnesses the search must be ruled an unreasonable violation of constitutional safeguards. When police identify themselves as such, search a room, and find contraband in it, the occupant's words or signs of acquiescence in the search accompanied by a denial of guilt do not show consent. Higgins v. United States, 93 U.S.App.D.C. 340, 209 F.2d 819 (1954). This is particularly true when a man is awakened at an early morning hour, opens the door, clad only in his underwear, expecting to see a friend and is confronted by a force of five strange men seeking entry. It is incredible that Shropshire would have voluntarily consented to a search which he knew would disclose incriminating evidence. His words should be considered an involuntary submission to authority and therefore insufficient to waive a constitutional right.

■ The defendants' motion to suppress the counterfeit notes is granted.