PEOPLE *v.* SMITH

OPINION OF THE COURT

1. MOTIONS—EVIDENCE—SUPPRESSION—TIMELINESS—DISCRETION.

A motion to suppress evidence in a criminal proceeding must be made, if at all, in advance of trial as a judge is not obliged to turn aside from the trial to conduct a separate hearing on admissibility of evidence although, as a matter of discretion, he may do so.

2. MOTIONS — TIMELINESS — DISCRETION — EVIDENCE — SUPPRESSION — ACQUISITION — DEFENSE KNOWLEDGE.

Trial judge did not abuse his discretion in refusing to conduct a separate hearing, while defendant's trial for assault with intent to commit murder was in progress, on a defense motion to suppress a box of unused shotgun shells which police officers, in one of two warrantless visits to defendant's apartment, had obtained from defendant's brother who allegedly had voluntarily given the unused shells to the police, where defense counsel failed to move to suppress that evidence before trial although he knew the police had the unused shells because defendant's brother had given to him the police receipt for the unused shells.

3. MOTIONS — TIMELINESS — DISCRETION — EVIDENCE — SUPPRESSION — ACQUISITION — LACK OF KNOWLEDGE.

Trial judge abused his discretion in denying a defense motion to suppress a spent shotgun shell obtained from defendant's

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 29 Am Jur 2d, Evidence §§ 426, 542.
[2] 29 Am Jur 2d, Evidence § 425.
[4–6] 29 Am Jur 2d, Evidence §§ 425, 426.
[7, 8] 4, 5 Am Jur 2d, Appeal and Error §§ 503, 839.
[9] 16 Am Jur 2d, Constitutional Law §§ 131, 135, 136.
[10] 16 Am Jur 2d, Constitutional Law § 131.
[11] 47 Am Jur, Searches and Seizures § 72.
[12] 47 Am Jur, Searches and Seizures § 71.
[13, 14] 47 Am Jur, Searches and Seizures § 72.
[15] 47 Am Jur, Searches and Seizures § 54.
    29 Am Jur 2d, Evidence § 415.

apartment in a warrantless police visit, even though the motion was made during the trial, where it appeared that neither defendant nor defense counsel had known before the trial that police had obtained the spent shotgun shell; the spent shell was not listed on a police receipt given to defendant's brother for a box of unused shells obtained from defendant's apartment in a later warrantless visit.

4. MOTIONS — EVIDENCE — SUPPRESSION — TIMELINESS — CONSTITUTIONAL RIGHT.

The interest in the orderly conduct of a trial which is the basis of the rule requiring that a motion to suppress be made in advance of trial, must be balanced against the defendant's constitutional right to have illegally seized evidence suppressed (US Const Am 4).

5. EVIDENCE — SUPPRESSION — NONDISCLOSURE — MOTION TO SUPPRESS — TIMELINESS.

When a prosecutor does not disclose important evidence until he introduces it at defendant's trial and neither defendant nor his counsel is aware of that evidence, the defendant does all he can be constitutionally required to do when he objects to that evidence when it is offered and seeks an opportunity then to show that it was illegally seized.

6. SEARCHES AND SEIZURES — WITHOUT WARRANT — CONSENT — EVIDENCE — SUPPRESSION — BURDEN OF PROOFS.

The prosecution has the burden of proving that consent to a warrantless search was freely and voluntarily given, on a motion to suppress where the prosecution relies on consent to justify the search.

7. APPEAL AND ERROR — CONSTITUTIONAL RIGHT — DEPRIVATION — REVIEW.

An appellate court, in reviewing a trial judge's ruling involving an asserted deprivation of a constitutional right, is obliged to review the evidence and to make its determination guided but not controlled by the trial judge's factual finding.

8. APPEAL AND ERROR—FINDINGS OF FACT—REVIEW—WEIGHT.

An appellate court will give a trial court's factual findings less than ordinary weight where the trial court has imposed an improper burden of proof on the defendant.

9. CONSTITUTIONAL LAW—RIGHTS—WAIVER—VALIDITY.

A waiver of constitutional rights is valid only when there is an intentional relinquishment or abandonment of a known right.

10. CONSTITUTIONAL LAW—RIGHTS—WAIVER—PRESUMPTION.
    A court must indulge every reasonable presumption against a
    waiver of constitutional rights.

11. SEARCHES AND SEIZURES—CONSENT—THIRD PARTIES—PRIVACY.
    A third party may not consent to a search, even of premises
    he owns or occupies, if the search constitutes an invasion of
    the privacy of another person upon whom an investigation
    has already focused.

12. SEARCHES AND SEIZURES—WITHOUT WARRANT—CONSENT—VOLUN-
    TARINESS.
    Consent to a warrantless search is valid only if it is a knowing,
    freely-given, voluntary consent, meaning that there has been
    a knowledgeable agreement or acquiescence.

13. SEARCHES AND SEIZURES — WARRANTLESS — CONSENT — THIRD
    PARTY — VOLUNTARINESS.
    Evidence taken by police from defendant's home without a war-
    rant or defendant's consent, at 4:30 a.m. when defendant's 17-
    year-old brother was alone and uninformed of the purpose of
    the investigation or that he could refuse to permit a search,
    was not taken with voluntary consent.

DISSENTING OPINION

DANHOF, J.

14. EVIDENCE — ADMISSIBILITY — SEARCHES AND SEIZURES — CON-
    SENT — WITNESSES — CREDIBILITY.
    *Trial court's determination that a spent shell taken by police
    from defendant's apartment without a warrant was admissible
    because defendant's brother, who was in charge of the premises,
    had voluntarily given that shell to the police, was supported
    by the evidence where defendant's brother had repeatedly
    admitted on the witness stand that he had previously lied,
    making his credibility a question for the trial judge to deter-
    mine and his decision to accept the officers' testimony that
    there had been no search and seizure was not clearly erroneous.*

15. SEARCHES AND SEIZURES — EVIDENCE — PLAIN VIEW RULE —
    ADMISSIBILITY.
    *Evidence in plain or open view of a police officer is admissible
    as no search has occurred.*

Appeal from Saginaw, Eugene Snow Huff, J.
Submitted Division 3 February 11, 1969, at Grand

Rapids. (Docket No. 3,856.) Decided October 2, 1969.

Ulister Smith was convicted of assault with intent to commit murder. Defendant appeals. Reversed and remanded for a new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George E. Thick II,* Prosecuting Attorney, and *Bruce J. Scorsone,* Chief Assistant Prosecuting Attorney, for the people.

*Robert J. Moskal,* for defendant on appeal.

Before: LEVIN, P. J., and DANHOF and HOLBROOK, JJ.

LEVIN, P. J. The defendant Ulister Smith's principal argument on appeal concerns the admissibility in evidence of certain items seized by the police in alleged contravention of his Fourth Amendment rights. The trial judge ruled that the items were admissible because the defendant's attorney failed to make a timely pretrial motion to suppress and also because he concluded on the merits that the search of the defendant's apartment was a valid search.

At 11 p.m., November 24, 1965, a police officer was shot as he attempted to pursue an apparent thief. His partner chased the unidentified man but did not apprehend him. The defendant was arrested the following day and later was charged with and now appeals his conviction of assault on the officer with intent to commit murder.[1]

Five hours after the shooting, at 4:30 a.m., three police officers went to the defendant's three-room

---

[1] MCLA § 750.83 (Stat Ann 1962 Rev § 28.278).

apartment looking for him. They were admitted by the defendant's 17-year-old brother, Willie Cassell, who lived there. Two of the three officers testified at the trial. They said that during this visit they obtained a single expended shotgun shell from a wastebasket in the bathroom. At 10 a.m. one of the officers who made the first visit and two other officers returned to the apartment for a second visit; at this time they obtained a box of unused shotgun shells. The police gave Cassell a receipt for the box of unused shells.

At the trial the officers identified a spent shell and unused shells as the ones they obtained at the defendant's apartment and these were admitted in evidence over objection. The spent shell was compared with a shell found in back of the store near the scene of the shooting; both of these shells were shown to have been fired from the same gun. The gun itself was never found.

The police did not have a search warrant on either visit to the defendant's apartment. On the first visit, they told Cassell that they were looking for his brother, the defendant, but they did not state the reason for their investigation. The officers asserted that on both visits Cassell voluntarily admitted them to the apartment. They contended that the shells were not discovered during the course of a search of the apartment. Rather, they said, on the first visit they asked Cassell whether the defendant had a gun and accompanied him as he went from one room in the apartment to another looking for a gun. They testified further that on the first visit Cassell produced the spent shell from a wastbasket in the bathroom.[2] An officer testified that on the second

---

[2] The bathroom door was not in "plain view" (see *People* v. *McDonald* [1968], 13 Mich App 226, 234); one of the officers testified it was a "bit out of the way."

visit Cassell obtained the box of unused shells from a dresser drawer in the bedroom and handed it to them.

Cassell testified that the police conducted a thorough search of the apartment and its contents, and themselves produced the spent shell from the wastebasket and obtained the box of unused shells from the dresser drawer. He asserted that he had never seen the spent shell before the police produced it.

The people argue that since Cassell voluntarily gave the police the shells there was no search and that even if the actions of the police could properly be characterized as a search and seizure, Cassell consented.

It is a familiar procedural rule that a motion to suppress must be made, if at all, in advance of trial. A trial judge is not obliged to turn aside from the trial of a criminal case to conduct a separate hearing on admissibility in the absence of the jury, although, as a matter of discretion, he may do so. *People* v. *Ferguson* (1965), 376 Mich 90, 95. One of the questions before us is whether the refusal of the trial judge to conduct a separate hearing in this case was an abuse of his discretion.

At the trial the defendant's attorney asserted that he had no prior knowledge that the police had obtained a spent shell in the defendant's apartment. As previously mentioned a spent shell (not referred to in the receipt given (Cassell) was identified at the trial as having been fired by the same gun which fired a shell found near the scene of the shooting. The defendant's attorney, Joseph R. McDonald, filed an affidavit in support of a motion for a new trial. He asserted that Cassell turned over to him the receipt for the unused shells during a pretrial inter-

view but did not tell him that a spent shell had also been obtained by the police.

Since the defendant's attorney knew of the seizure of the unused shells and chose not to attempt to suppress that evidence, the trial judge was not obliged to entertain out of time an objection to the introduction of the unused shells.[3] However, as to the spent shell a different view is taken.

The defendant was in custody from the time of his arrest the day after the shooting, November 25, 1965, until the trial, April 13, 1967. The facts that the police had visited the defendant's apartment and had there obtained a spent shell were not brought out at the preliminary examination. There is nothing in the record showing that the defendant or his attorney had any reason before the trial to believe that such evidence had been obtained by the police. On the stand Cassell was an unresponsive, difficult witness. It is understandable that the attorney's interview with him would not have brought to light the facts that the police had made two visits to the defendant's apartment and that they had obtained, on the first visit, evidence not listed in the receipt given Cassell at the conclusion of the second visit.

The fact that the police had obtained the unused shells, which was revealed by the receipt, would not have alerted the attorney to the fact that other items not listed had been taken. Indeed, one examining the receipt could reasonably assume that all the

[3] Nevertheless, as appears below, we have concluded that upon the retrial we have ordered neither the spent nor the unused shells are to be admitted in evidence. Although the trial judge was not obliged to entertain out of time a motion to suppress the unused shells, he did decide the question of the admissibility of both the spent and unused shells on the merits. Furthermore, the reason for not allowing a belated motion is not pertinent when the case will be retried and we have before us the facts concerning the admissibility of the unused shells; see Gouled v. United States (1921), 255 US 298 (41 S Ct 261, 65 L Ed 647) and Amos v. United States (1921), 255 US 313, 316 (41 S Ct 266, 65 L Ed 654), discussed in the next footnote.

items taken were listed. There is no reason to disbelieve the attorney's assertion that he was unaware before the trial of the seizure of the spent shell.

The interest in the orderly conduct of a trial, which is the basis of the rule requiring that a motion to suppress be made in advance of trial, must be balanced against the defendant's constitutional right to have illegally seized evidence suppressed. In a case such as this where the prosecutor has obtained important evidence and decides not to disclose that fact before introduction of the evidence at the time of trial and there is no reason for the defendant or his counsel to have been aware that such evidence has been taken, the defendant does all that he can constitutionally be required to do when he objects to the introduction of the evidence at the time it is offered in evidence and seeks an opportunity then to show that it was illegally seized.[4]

Having reached the conclusion just stated, the case would ordinarily be remanded for a testimonial

---

[4] See *Agnello* v. *United States* (1925), 269 US 20, 34 (46 S Ct 4, 70 L Ed 145, 51 ALR 409); *People* v. *Zeigler* (1960), 358 Mich 355, 363–365; *People* v. *Kaigler* (1962), 368 Mich 281, 294 (Kavanagh, J.); *State* v. *Cullen* (1968), 103 NJ Super 360 (247 A2d 346). See, also, *People* v. *Johnson* (1967), 38 Ill 2d 399 (231 NE2d 447). See, generally, 2 Gillespie, Michigan Criminal Law & Procedure, § 874, p 1143; 1968 Cum Supp § 874, p 157. *Cf. People* v. *Dombrowski* (1968), 10 Mich App 445, 448; *People* v. *Bass* (1926), 235 Mich 588, 593; *People* v. *Ferguson* (1965), 376 Mich 90, 95; *People* v. *Wilson* (1967), 8 Mich App 651; *People* v. *Harper* (1966), 3 Mich App 316, 320; *People* v. *Heibel* (1943), 305 Mich 710, 712.

See, also, *Gouled* v. *United States, supra,* where defendant's motion for suppression had been denied before trial and the United States Supreme Court held, nevertheless, that on the facts of that case it should have been reconsidered when renewed upon trial (pp 312, 313): "where, in the progress of a trial, it becomes probable that there has been an unconstitutionl seizure of papers, it is the duty of the trial court to entertain an objection to their admission, or a motion for their exclusion, and to consider and decide the question as then presented, even where a motion to return the papers may have been denied before trial. A rule of practice must not be allowed for any technical reason to prevail over a constitutional right." Similarly, see *Amos* v. *United States, supra,* where no pretrial motion had been made and the facts came out at the trial.

hearing on the admissibility of the seized evidence. However, there is no need to adhere to that course of action in this case. In addition to his ruling that the defendant's objection was untimely, the judge stated on two occasions during the trial and again in explaining his denial of the motion for a new trial that on the merits the evidence was properly obtained. The prosecutor has not asked for an opportunity to introduce additional evidence. At the trial three police officers who went to the defendant's apartment and Willie Cassell were questioned extensively regarding the two visits.[5] It does not appear that any additional relevant evidence would be forthcoming at a hearing following a remand.[6]

In denying a renewed motion to suppress made after Cassell testified at the trial, the judge stated:

"The defendant has the burden of proof on a motion to suppress [and] has not made out a case here."

This was erroneous. On a motion to suppress evidence where the prosecution seeks to rely upon consent to justify a warrantless search, it has the burden of proving that the consent was in fact freely and voluntarily given.[7]

In reviewing a trial judge's ruling on an issue involving asserted deprivation of a constitutional right, an appellate court is obliged itself to review the evidence and to make its determination guided

---

[5] Had there been a separate hearing on the motion to suppress, the record of the trial could not be considered to amplify the evidence adduced before trial. *People* v. *Kaigler, supra*, pp 292, 297–299. But here, since the trial record is the record upon which the trial judge concluded on the merits that the evidence was admissible, that is the record which we review.

[6] The two officers who visited the apartment but who did not testify were not endorsed as witnesses on the information.

[7] *Bumper* v. *North Carolina* (1968), 391 US 543 (88 S Ct 1788, 20 L Ed 2d 797); *People* v. *Kaigler, supra; People* v. *Shaw* (1968), 9 Mich App 558, 565.

but not controlled by the trial judge's factual determination.[8] In this case the trial judge's determination is entitled to less weight than we would ordinarily give it since he imposed an improper burden of proof on the defendant.

The law regarding consent to a search by a defendant or a third party has been significantly affected by a fundamental shift in emphasis in the application of the Fourth Amendment[9] announced by the United States Supreme Court:

"The premise that property interests control the right of the Government to search and seize has been discredited. Searches and seizures may be 'unreasonable' within the Fourth Amendment even though the Government asserts a superior property interest at common law. We have recognized that the principal object of the Fourth Amendment is the protection of privacy rather than property, and have increasingly discarded fictional and procedural barriers rested on property concepts." *Warden, Maryland Penitentiary v. Hayden* (1967), 387 US 294, 304 (87 S Ct 1642, 18 L Ed 2d 782).

In other cases,[10] in evaluating claims that constitutional rights have been waived, the United States

---

[8] *Wren* v. *United States* (CA 10, 1965), 352 F2d 617, 619; *Cf.* *People* v. *Hamilton* (1960), 359 Mich 410, 418; *People* v. *Pallister* (1968), 14 Mich App 139, 141; *People* v. *Summers* (1968), 15 Mich App 346, 348. In *People* v. *Shaw, supra,* our Court reversed the trial judge's determination that the defendant had consented to a search; the facts and circumstances were somewhat similar to those in the present case. *Cf. Ker* v. *California* (1963), 374 US 23, 33, 34 (83 S Ct 1623, 10 L Ed 2d 726, 738); *Cox* v. *Louisiana* (1965), 379 US 536, 545, fn 8 (83 S Ct 453, 13 L Ed 2d 471); *Jacobellis* v. *Ohio* (1964), 378 US 184, 188, 189 (84 S Ct 1676, 12 L Ed 2d 793).

[9] Applicable to the States through the Fourteenth Amendment. See *Mapp* v. *Ohio* (1961), 367 US 643 (81 S Ct 1684, 6 L Ed 2d 1081, 84 ALR2d 933).

[10] See, *e.g., Johnson* v. *Zerbst* (1938), 304 US 458, 464 (58 S Ct 1019, 82 L Ed 1461); *Maxey* v. *Proctor* (1955), 343 Mich 453; *Book Furniture Company* v. *Chance* (1958), 352 Mich 521. Recently the Michigan Supreme Court declared that "A true waiver is an intentional, voluntary act and cannot arise by implication. It has been

Supreme Court and the Michigan Supreme Court have applied the familiar principle that waiver is the intentional relinquishment or abandonment of a known right.[11]  In *People* v. *Shaw* (1968), 9 Mich App 558, where we reversed a finding that the defendant had consented to a search, we spoke of the presumption against waiver of constitutional rights and stated that the basis for the rule which requires us to indulge every reasonable presumption against waiver is (p 562) "not far to seek.  It rests on the plain fact of human experience that rights easily waived are rights easily lost."

In *People* v. *Overall* (1967), 7 Mich App 153, our Court held that a third party may not consent to a search, even of premises occupied and owned by him, if the search constitutes an invasion of the privacy of another person upon whom an investigation has focused.[12]  Other courts have stated that

---

defined as the voluntary relinquishment of a known right."  *Kelly* v. *Allegan Circuit Judge* (1969), 382 Mich 425, 427.

[11] In *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974), the United States Supreme Court extended this concept to require police officers to advise an accused person in custody of his constitutional right to remain silent as one of several preconditions to the use in court of any statement he might subsequently make.  See footnotes 13 and 14.

[12] The *Overall* decision was based on *Stoner* v. *California* (1964), 376 US 483 (84 S Ct 889, 11 L Ed 2d 856), and *People* v. *Kaigler, supra.*

In *Stoner* the Court held invalid a search of a hotel room authorized by a night clerk, stating (pp 488, 489):

"Our decisions make clear that the rights protected by the Fourth Amendment are not to be eroded by strained applications of the law of agency or by unrealistic doctrines of 'apparent authority.'  As this Court has said, 'it is unnecessary and ill-advised to import into the law surrounding the constitutional right to be free from unreasonable searches and seizures subtle distinctions, developed and refined by the common law in evolving the body of private property law which, more than almost any other branch of law, has been shaped by distinctions whose validity is largely historical * * * we ought not to bow to them in the fair administration of the criminal law. To do so would not comport with our justly proud claim of the procedural protections accorded to those charged with crime.'  [Citations omitted.]

"It is important to bear in mind that it was the petitioner's constitutional right which was at stake here, and not the night clerk's

for a consent to search to be valid the person who
is the object of the investigation must have been
aware of his constitutional right to refuse to per-

nor the hotel's.   It was a right, therefore, which only the petitioner
could waive by word or deed, either directly or through an agent.
It is true that the night clerk clearly and unambiguously consented
to the search.   But there is nothing in the record to indicate that
the police had any basis whatsoever to believe that the night clerk
had been authorized by the petitioner to permit the police to search
the petitioner's room."

In *State* v. *Matias* (1969), 51 Hawaii 62, 270 (451 P2d 257), the Su-
preme Court of Hawaii (one justice dissenting) held on the au-
thority of *Stoner* that "the Fourth Amendment right may be waived
only by the individual entitled to the right," and that, accordingly,
a third-party consent is always insufficient.   Another decision which
recognized the potential impact of *Stoner* is *United States* v. *Mackie-
wicz* (CA 2, 1968), 401 F2d 219, 223, 224, but the court there found
that the consenting spouse had been authorized to consent to a search
of personal tax records because the consenter was the agent of the
nonconsenting spouse for "tax matters" and the return under in-
vestigation was a joint return.   See, also, *State* v. *Pina* (1963), 94
Ariz 243 (383 P2d 167, 169), and *State* v. *Warfield* (1924), 184
Wis 56 (198 NW 854).

Our decision in *Overall* and that of the Hawaii Supreme Court in
*State* v. *Matias, supra,* excepted, courts generally have not adopted
*Stoner's* de-emphasis of "apparent authority" and "private property
law" concepts and the statements that a defendant's constitutional
right is his own, which only he or his "authorized agent" can waive.
Illustrative is *Commonwealth* v. *Rundle* (1968), 432 Pa 466 (248
A2d 197), where a closely divided Pennsylvania Supreme Court held
valid and binding on the defendant his wife's consent to search
premises used by the defendant which she had a right to enter; the
dissenters would have held the search invalid on the authority of
*Stoner.*   Similarly, see *Jenkins* v. *State* (1967), — Del — (230 A2d
262), where the Delaware Supreme Court held that defendant's girl
friend with whom he lived in premises rented by her, defendant con-
tributing to the rent payments, could give effective consent to search
because she was the sole legal tenant; *Stoner* was distinguished on
the ground that the right of control and possession of the consenting
party in that case was inferior to that of the nonconsenting party.
This decision was affirmed by the United States Supreme Court (1969),
395 US 213 (89 S Ct 1677, 23 L Ed 2d 253) on other grounds; fn 2
of the Court's opinion states:

"Petitioners remaining contentions have been adequately resolved
by the court below.   See *Jenkins* v. *State* (1967), — Del — (230
A2d 262), and *Jenkins* v. *State* (1968), — Del — (240 A2d 146)."

In *Frazier* v. *Cupp* (1969), 394 US 731 (89 S Ct 1420, 22 L Ed 2d
684), the United States Supreme Court recently held that where the
defendant owned a duffel bag and used it jointly with his cousin
and left the bag at the cousin's home, the cousin could consent to
its search at the time of *his* (the cousin's) arrest (p 740): "he
clearly had authority to consent to its search."   The Court ruled
that evidence found in the search implicating the defendant was ad-

mit the requested search.[13]   Still other courts have
ruled that unless a *Miranda*-type specific warning
related to Fourth Amendment rights is given a sus-
pect in custody, his consent to a search will not be
effective.[14]   Support for all these propositions ap-

missible even though he had not consented to the search on the
authority of *Harris* v. *United States* (1968), 390 US 234 (88 S Ct
992, 19 L Ed 2d 1067). "It has long been settled that objects falling
in the plain view of an officer who has a right to be in the position
to have that view are subject to seizure and may be introduced in
evidence," p 236, and *Warden, Maryland Penitentiary* v. *Hayden*
(1967), 387 US 294, 299, 300 (87 S Ct 1642, 18 L Ed 2d 782),
where the Court held admissible identifying clothing found in a hot-
pursuit search for weapons.   The Court concluded its opinion with
the observation that in allowing his cousin to use the bag and in
leaving it at his cousin's home, the defendant (p 740) "must be
taken to have *assumed the risk* that [the cousin] would allow someone
else to look inside." (Emphasis supplied.)

Although it is greatly to be doubted whether the United States
Supreme Court, having criticized in *Stoner* the "unrealistic doctrines
of 'apparent authority' and 'subtle distinctions, developed and refined
by the common law in evolving the body of private property law,' "
meant to introduce still another and novel fiction—assumption of
risk—into this already badly muddled area of the law, it is apparent
from the Court's nonaction in *Jenkins* v. *Delaware, supra,* that it is
content at the moment to treat as adequate (whether or not correct)
State interpretations which are grounded on "subtle distinctions, de-
veloped and refined by the common law in evolving the body of private
property law."

*Frazier* v. *Cupp* itself may be explained on the ground that there
the cousin of the defendant, who as a co-user of the duffel bag con-
sented to its search, may have thought he would obtain some advantage
by consenting to a search in the police investigation which had also
focused upon him.   The balancing of the right of a co-owner or co-user
to protect himself in a police investigation as best he can against
the other owner's or user's right of privacy does not justify reliance
on a third party's consent in a case such as this one where the con-
senter is not one upon whom an investigation has focused.

[13] *Schoepflin* v. *United States* (CA 9, 1968), 391 F2d 390, 399;
*Cipres* v. *United States* (CA 9, 1965), 343 F2d 95, 97; *Rosenthall* v.
*Henderson* (CA 6, 1968), 389 F2d 514 (burden of proof is on gov-
ernment to show that consent was intelligently given); *Gorman* v.
*United States* (CA 1, 1967), 380 F2d 158 (where the defendant is
in custody, the burden on the government to show that the consent
was voluntary, *i.e.*, the intentional relinquishment or abandonment
of a known right, is particularly heavy); *Wren* v. *United States* (CA
10, 1965), 352 F2d 617, 618 (the defendant must be cognizant of
his rights; the government has the burden of proof); *United States*
v. *Barton* (DC Mass, 1967), 282 F Supp 785.   See, also, the cases
in footnote 14 which hold that advice regarding the right to withhold
consent is a necessary precondition to the validity of a consent.

[14] *United States* v. *Nikrasch* (CA 7, 1966), 367 F2d 740, 744;

pears in opinions of the Michigan Supreme Court. *People* v. *Zeigler* (1960), 358 Mich 355; *People* v. *Kaigler* (1962), 368 Mich 281 (*per* T. M. Kavanagh, J.); *People* v. *Weaver* (1928), 241 Mich 616.[15]

---

*United States* v. *Blalock* (DC Pa, 1966), 255 F Supp 268; *United States* v. *Moderacki* (DC Del, 1968), 280 F Supp 633, 636. However, most courts which have considered the matter have concluded that where the consent relied on is that of the *defendant* no specific Fourth Amendment warning need be given if the defendant has been given the *Miranda* warnings; these courts have reasoned that the *Miranda* warnings are sufficient to apprise a defendant of his right to remain silent. *Gorman* v. *United States* (CA 1, 1967), 380 F2d 158; *State* v. *Oldham* (1968), 92 Idaho 124 (438 P2d 275); *People* v. *Beal* (1968), 268 Cal App 518 (73 Cal Rptr 787) and cases therein cited.

[15] "The law of searches and seizures, as revealed in that [the United States Supreme] Court's decisions, is the product of the interplay of the 4th Amendment's guarantee against unreasonable search and seizure and the 5th Amendment's guarantee that no person shall be compelled in any criminal case to be a witness against himself, its dual purpose being to protect the privacy of the individual and to protect him against compulsory production of evidence to be used against him. (Citations omitted.) Proof of confession is never admissible unless shown to have been made voluntarily, and the burden of proof is on the people to show that it was. (Citation omitted.) Confessions have been held to have been made voluntarily and to be admissible (citations omitted) when the proofs show that the officers to whom the confessions were made first advised the confessor of his rights, told him he was under no obligation to talk at all and cautioned him that his statements would be used as evidence against him. * * *

"Such are the safeguards thrown around admission into evidence of confessions, to help insure their voluntary character. And so, with respect to incriminating evidence, other than confessions, obtained by search and seizure, under a conceivable showing of facts, such as, *inter alia*, that the accused was first advised of his rights, informed that he need not submit to a search and that, if he did, the fruits thereof would be used in evidence against him, his consenting to the search and seizure may well, in the absence of contrary indications, be held to be voluntary, not an involuntary act secured under coercion, and, hence, a waiver of his constitutional rights, rendering such evidence admissible." *People* v. *Zeigler, supra,* pp 363–365.

Similarly, see *People* v. *Kaigler, supra,* p 294 (per T. M. Kavanagh, J., three other justices concurring, the other justices reaching the same result by different reasoning and signing separate opinions).

The following statement by our Supreme Court is also pertinent:

"The case which goes further than any other that we have found is *State* v. *Griswold,* 67 Conn 290 (34 A 1046, 33 LRA 227). In this case the search was made with the consent and assistance of one in charge of defendant's office and found by the court to be his agent. It was held that defendant's constitutional rights had not been infringed. *I think this decision is fundamentally unsound.* If the constitutional rights of the citizen may be waived by any Tom,

Application of the principles stated in *Overall,
Zeigler, Kaigler* and *Weaver* requires reversal in
this case and suppression of the evidence seized.
Cassell could not consent to a search which had
already focused on the defendant. Additionally,
it is clear upon an examination of the record that
the consent alleged to have been given by Cassell
was not a knowing, freely-given, voluntary consent.

Returning to the facts of this case, it is noted
at the outset that, in recognition of the fact that the
Fourth Amendment "protects people, not places,"[16]
minimal significance may be attached to the fact
that the apartment occupied by the defendant and
Cassell was the defendant's, not Cassell's, and the
defendant paid the rent and supported Cassell.
More important is the totality of the facts and
circumstances.[17]

Willie Cassell, a 17-year-old negro youth, was
confronted by three policemen at 4:30 a.m. Even
if, as the police assert, he produced the spent shell
and unused shells, this must have been, as the police
testified, in response to a request by the police. The
defendant's right of privacy in the contents of his
dresser drawer where the unused shells were found
is entitled to the utmost protection; it is not to be
lightly waived.[18] A consent to be valid must be a
voluntary consent,[19] and this, by definition, means

Dick, or Harry, whom he employs and *temporarily puts in charge of
his property,* they hang by a very slender thread indeed." (Emphasis
supplied.) *People* v. *Weaver* (1928), 241 Mich 616, 620, 621.

Also relevant is *People* v. *Shaw, supra,* decided by our Court.

[16] *Katz* v. *United States* (1967), 389 US 347, 351 (88 S Ct 507,
19 L Ed 2d 576).

[17] "What constitutes waiver or consent under the Fourth Amend-
ment is determined by the particular circumstances in each case."
*People* v. *Kaigler, supra,* p 295.

[18] See *State* v. *Evans* (1962), 45 Hawaii 622 (372 P2d 365, 372);
*State* v. *Warfield* (1924), 184 Wis 56 (198 NW 854).

[19] *People* v. *Kaigler, supra; People* v. *Zeigler, supra; People* v.
*Shaw, supra; Judd* v. *United States* (CA DC, 1951), 190 F2d 649.
See, also, *Waldron* v. *United States* (CA DC, 1955), 219 F2d 37,

knowledgeable agreement or acquiescence (see text accompanying footnote 10). Cassell, as the police officers' own testimony shows, was not informed of the purpose of the investigation. He was not advised that he could refuse to permit a search.[20] These facts, together with Cassell's age, the hour of the police officers' arrival and the attendant coercive atmosphere negate a finding of voluntariness. It is idle to suppose that Cassell would have in any way interfered with the police officers.[21]

See, generally, 2 Gillespie, Michigan Criminal Law & Procedure, 1968 Cum Supp § 875, p 161.

[20] Even if, as a number of courts have held (see footnote 14), it is not an essential precondition to the validity of an accused person's consent to a search that he shall have been given a specific Fourth Amendment warning as long as he was given the *Miranda* warnings, the failure to give any advice concerning the constitutional right to withhold consent is a factor to be considered in appraising whether the alleged consent is voluntary. *Rosenthall* v. *Henderson* (CA 6, 1968), 389 F2d 514, 516; *People* v. *Haskell* (1968), 41 Ill 2d 25 (241 NE2d 430). *Cf. United States* v. *Barton* (DC Mass, 1967), 282 F Supp 785; *Gorman* v. *United States, supra,* where the court emphasized that the *Miranda* warning of the right to remain silent had been given the defendant both in finding that his consent to search was voluntary and in holding that a specific search and seizure warning was not required.

It, therefore, appears that the law of consensual searches has progressed at least to the point of the pre-*Miranda* confession cases in the sense that whether an accused person was advised of his rights is a significant factor in determining the voluntariness of his actions. *Davis* v. *North Carolina* (1966), 384 US 737, 740 (86 S Ct 1761, 16 L Ed 2d 895). See discussion 8A Moore's Federal Practice, § 41.07[4], pp 41-45.

[21] See *United States* v. *Roberts* (D DC, 1959), 179 F Supp 478 (consent of mother to police search at midnight held not freely and intelligently given); *United States* v. *Shropshire* (ED La, 1967), 271 F Supp 521 (consent obtained when defendant admitted police at early morning hour held involuntary). Also finding invalid a consent obtained under the implied coercion of the apparent authority of police officers are *Amos* v. *United States* (1921), 255 US 313, 317 (41 S Ct 266, 65 L Ed 654); *Pekar* v. *United States* (CA 5, 1963), 315 F2d 319; *Higgins* v. *United States* (1954), 93 App DC 340 (209 F2d 819); *Talavera* v. *State* (Fla App, 1966), 186 So 2d 811); *People* v. *Haskell* (1968), 41 Ill 2d 25 (241 NE2d 430); *Cf. Nelson* v. *United States* (CA DC, 1953), 208 F2d 505.

See, also, *People* v. *Jennings* (1956), 142 Cal App 2d 160 (298 P2d 56) (dictum that two minor daughters [ages 15 and 17] could not consent; police arrived early in the morning accompanied by a police matron); *State* v. *Malcom* (1964), — Del — (203 A2d 270) (dictum that 16-year-old son could not consent); *United States* v. *Block* (SD

Looking at the totality of the facts and circumstances, Cassell's responses to the police request did not constitute a voluntary waiver of the defendant's constitutional right to be protected from an unreasonable search and seizure.

The wounded officer identified the defendant at a one-man showup on December 16, 1965, and at the trial but could not identify him in a five-man lineup on November 26, 1965, just two days after the shooting. His partner could not identify the defendant. Although there was other circumstantial evidence implicating the defendant it cannot be declared beyond a reasonable doubt[22] that the defendant would have been convicted even if the illegally seized shells had not been introduced in evidence. Accordingly, the error was not harmless.

Another assignment of error needs to be mentioned because it concerns a matter likely to recur upon a retrial. Questions were put to Willie Cassell about his extrajudicial statements concerning shoes alleged to have been worn by the defendant. The prosecutor referred to this testimony in his argument to the jury. The testimony regarding the shoes was confusing and the prosecutor's argument may well have exceeded permissible bounds. On remand the testimony and argument should be kept within the limits set out in *Ruhala* v. *Roby* (1967), 379 Mich 102.

Reversed and remanded for a new trial.

Judge HOLBROOK concurs for the reason that the search and seizure was illegal. The fact that the minor brother of the defendant furnished the spent

---

NY, 1962), 202 F Supp 705 (20-year-old handyman could not consent); *May* v. *State* (Miss, 1967), 199 So 2d 635 (son cannot waive defendant's right).

[22] *People* v. *Liggett* (1967), 378 Mich 706, 716, 717; *Chapman* v. *California* (1967), 386 US 18, 23, 24 (87 S Ct 824, 17 L Ed 2d 705), reh. den. 386 US 987 (87 S Ct 1283, 18 L Ed 2d 241).

shell and unused shells under the direction of the police does not make it any the less a search and seizure.

Danhof, J., (*dissenting*). The opinion of the majority is predicated upon the assumption that there was in fact a search in this particular case. It is with this assumption rather than the opinion that I disagree.

The trial judge said when he denied the motion for a new trial:

"Although there was some conflict, partly as a result of defendant's brother changing some of his previous statement to the police, the great weight of the evidence indicated that there was no unlawful search or seizure in this case.

"Unlike the cases cited by defendant's counsel, when the police here went to defendant's apartment to talk to defendant, defendant's teen-age brother opened the door, invited them into the apartment, and in answer to their questions about defendant, got the exhibits and gave them to the police, took a receipt for them.

"*It is the opinion of this court both at the trial and now that the evidence which is on the record in this case, shows no search and seizure of defendant's premises in his absence,* but a voluntary offer of the shells to the police by defendant's brother, who was in sole charge of the apartment and the premises at the time and apparently was trying to cooperate in establishing the innocence of the defendant of this offense or of any offense. (Emphasis supplied.)

"That the shells were later found to be material, circumstantial evidence in the case, did not make their original acquisition illegal or require that they be suppressed, in the opinion of this court, even if a timely motion to that effect had been presented in advance of trial."

The record discloses a conflict in testimony between the police officers and defendant's brother, Willie Cassell. And, since Willie Cassell repeatedly admitted on the witness stand that he had lied to the police in earlier statements it was for the trial judge to determine the question of credibility, and he made this determination in favor of the police officers. I cannot say that upon this record that such determination was clearly erroneous.

This Court follows the "plain view" rule that where an officer sees the evidence in open or plain view without the necessity of a search, the evidence is admissible as no search has occurred, *People* v. *Kuntze* (1963), 371 Mich 419; *People* v. *McDonald* (1968), 13 Mich App 226.

The case of *Davis* v. *United States* (CA9, 1964), 327 F2d 301, is factually similar to the instant case. Davis' eight-year-old daughter admitted two customs agents and two policemen to his home. One of the agents observed a wastebasket in plain view containing what the agent recognized as marihuana. The court said, pp 304, 305:

"It is obvious from its denial of defendant's motion to suppress that the trier of the fact credited the testimony of the officers that they had gone to defendant's home solely for the purpose of talking to him—and not for the purpose or intent of entering and searching the premises or arresting him, without a warrant. Likewise, it is certain that he believed the officers' testimony as to the manner of entry into the house and that the intent of the officers at the instant of entry was still but to attempt to talk to the defendant.  *  *  *

"This case is distinguished from all of the cases referred to by appellant, by the entirely peaceful and invited entry into the home, with no search or intent to search in the minds of the officers upon entry. However, once legally inside the room, the

officers were not required to remain blind to the obvious. The fact that a wastebasket containing marihuana was in their plain sight within five feet of the door at the time that they entered and that another wastebasket containing marihuana was in plain sight in the bathroom at that time was uncontradicted by the defendant when he testified on the motion to suppress. 'It is well established that it is not a search to observe what is open and patent either in daylight or in artificial light.' (Citations omitted.) As was said by Judge Holtzoff, (citations omitted) 'if, without a search and without an unlawful entry into the premises, a contraband article * * * is seen in the premises, the police are not required to close their eyes and need not walk out and leave the article where they saw it.' "

While it is true that the agents and the police officers in the *Davis Case, supra,* went to defendant's house in the daytime and not at night, I do not find that this factual difference should be controlling. There is nothing to indicate that the officers conducted themselves in anything other than a lawful manner. To imply, as it is done by the majority, otherwise is unfair.

In *State* v. *Brant* (1967), 260 Iowa 758 (150 NW 2d 621) the court held that where the defendant consented to officers entering his hotel room and one officer picked up defendant's coat and saw a gun sticking out of the inside pocket there was no search and the officer could properly seize that which was readily observable.[1]

This case might also be considered as one in which if there was a search it was by the defendant's brother as a private citizen who then handed

---

[1] See also article entitled "Third Party Consent to Search and Seizure" in Wash U L Quarterly 12, 18–20 (1967).

the particular items in question to the police, and thus, there was no search by police officers.[2]

Either way I cannot find upon this record that a search was conducted by the police officers so as to preclude the introduction into evidence of the spent shell or the unused shells.   I would affirm.

[2] *People* v. *Helmus* (1966), 50 Misc 2d 47 (269 NYS2d 613) [defendant's wife gave his gun to police]; *Gutridge* v. *Maryland* (1964), 236 Md 514 (204 A2d 557) [defendant's wife opened his locker and handed narcotics therein to police]; *Lucas* v. *Texas* (Tex, 1963), 368 SW2d 605, *reh. den.* (1963) [defendant's landlord found plastic masks while checking commodes and gave masks to police].