PEOPLE *v.* SHAW.

1. CONSTITUTIONAL LAW—SEARCHES AND SEIZURES.
    Constitutional right that a search be founded on a warrant issued on probable cause, supported by oath or affirmation and particularly describing the place to be searched and the persons or things to be seized, may be waived by consent (US Const, Am 4).

2. SAME—PRESUMPTION AGAINST WAIVER.
    Courts indulge every reasonable presumption against waiver of fundamental constitutional rights and do not presume acquiescence in the loss of fundamental rights.

3. SEARCHES AND SEIZURES—CONSENT—COURTS.
    Determination of the sufficiency of a consent to a search as affected by the status of the consenter as in custody depends upon the particular facts and circumstances of each case, and there are no hard rules by which the presence of a certain fact, in addition to custody, will bind the court to a particular decision.

4. SAME—WAIVER—CONSENT—COERCION—BURDEN OF PROOF.
    The obtaining of a search warrant may be waived by an individual and he may give his consent to search and seizure, but such waiver or consent must be proved by clear and positive testimony and be shown to have been made without duress or coercion, actual or implied, and the prosecutor must show

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2]  16 Am Jur 2d, Constitutional Law § 131 *et seq.*; 28 Am Jur 2d, Evidence § 425 *et seq.*
[3–5]  47 Am Jur, Searches and Seizures § 71.
[6]  47 Am Jur, Searches and Seizures § 52 *et seq.*
[7, 9]  29 Am Jur 2d, Evidence § 545 *et seq.*
[8]  29 Am Jur 2d, Evidence § 320 *et seq.*
[10]  4 Am Jur 2d, Appeal and Error §§ 539, 540.
[11]  53 Am Jur, Trial § 74.

a consent that is unequivocal and specific, freely and intelligently given, a burden that is particularly heavy when the individual is under arrest (US Const, Am 4).

5. SAME—CONSENT—ARREST.

Valid consent to a search may be given by the owner of property even though he is in detention following arrest.

6. SAME—PRIVACY—SELF-INCRIMINATION.

The law of searches and seizures has the dual purpose of protecting the privacy of the individual and of protecting him against compulsory production of evidence to be used against him (US Const, Ams 4, 5).

7. CRIMINAL LAW—SEARCHES AND SEIZURES—QUESTIONING—EVIDENCE —ASSISTANCE OF COUNSEL.

Consent of defendant, accused of murder, to search of his car which turned up .22-caliber cartridge casing with same marks as one found at scene of murder, showing they were fired from same gun, held, not freely given under the circumstances, where defendant, who had denied doing the murder, knew that the search was likely to uncover incriminating evidence and claimed that he had been awake for 30 hours and had been in custody under arrest for 5 to 7 hours, had been subjected to intense questioning, and claimed that he had asked to see a lawyer before answering questions but had been questioned at police headquarters without a lawyer present.

8. SAME—NOTICE—PRIOR ACTS—EVIDENCE—BURDEN OF PROOF.

Evidence of prior acts of a criminal defendant may be relevant to a showing of motive for commission of the crime charged, but the burden is upon the prosecution to demonstrate to the trial judge the relevance of the proffered evidence, and it should be excluded, despite its relevancy, where probative value is outweighed by attendant prejudice to the defendant (CL 1948, § 768.27).

9. SAME—STATEMENTS TO OFFICERS—ASSISTANCE OF ATTORNEY.

Statements by one accused of crime, made to officers after arrest and after request to consult attorneys had been made and denied, would be inadmissible at trial on the charge for which detention had been made.

10. APPEAL AND ERROR—JUDGE'S HOSTILITY TO DEFENSE COUNSEL— PREJUDICE.

Allegation of error, that the trial judge conducted the proceedings in a manner hostile to defense counsel resulting in prejudice to the defendant, held, unsupported by the record.

11. Trial—Control by Judge.
    Trial judge has a statutory duty to control all aspects of trials
    and where clear abuse of discretion in this matter is shown, con-
    victions cannot stand (CL 1948, § 768.29).

Appeal from Recorder's Court of Detroit; Sche-
manske (Frank G.), J. Submitted Division 1 May 4,
1967, at Detroit. (Docket No. 1,414.) Decided March
20, 1968. Rehearing denied June 3, 1968. Leave to
appeal granted August 1, 1968. See 381 Mich 769.

Ulyssese Grant Shaw was convicted of murder in
the first degree. Defendant appeals. Conviction va-
cated and cause remanded for a new trial.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Samuel J. Torina,* Chief Ap-
pellate Lawyer, and *Luvenia D. Dockett,* Assistant
Prosecuting Attorney, for the people.

*Milton R. Henry,* for defendant.

J. H. Gillis, P. J. Charles Johnson was shot and
killed on December 30, 1964, in the garage behind
his home in the city of Detroit. Defendant Ulyssese
Grant Shaw was arrested for Johnson's murder later
the same day in Pontiac and subsequently was de-
livered to Detroit police officers, who transported
him to Detroit. An 11-day jury trial in August of
1965 culminated in a conviction for first-degree mur-
der; from this conviction defendant appeals.

Defendant contends that reversible error was com-
mitted in several respects during this lengthy trial.
We deal fully with only one of these, the search and
seizure issue, which alone warrants a new trial.

Over an objection by defense counsel, the trial
court admitted into evidence a shell casing and a

live .22-caliber bullet found in defendant's automobile on December 31, 1964, about 18 hours after defendant was arrested in Pontiac. A police laboratory officer later testified.that a comparison-microscope examination showed the markings on this casing and the one found at the scene of the crime to be identical; the officer further stated that identical markings are caused by firing both bullets from the same gun. The murder weapon itself was never found. It is therefore clear that the conviction cannot stand if it was error to admit into evidence the shell casing found in defendant's car.

The prosecution contends that the shell casing was properly admitted because it was discovered during a search authorized by the defendant's consent. Defendant is said to have given this consent, in the absence of counsel and during a period of interrogation, sometime between 10 p.m. December 30 and 1 a.m. December 31. According to the testimony of a police detective assigned to this case, defendant was asked in the course of the questioning, "Do you have any objections if our laboratory men look over your car?" The response was, "None at all. None whatsoever." Defense counsel claims in this appeal that these words do not indicate the "free, intelligent, unequivocal and specific consent" required to support a search, not incident to an arrest, in the absence of a warrant.

If defendant consented to the search of his automobile, he waived his constitutional right that the search be founded on a warrant issued "upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." US Const, Am 4. In the context of a right-to-counsel case the United States Supreme Court expressed itself on the subject of waiver of constitutional rights in the following manner:

"It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.'" *Johnson* v. *Zerbst* (1938), 304 US 458, 464 (58 S Ct 1019, 1023, 82 L ed 1461, 1466, 146 ALR 357, 361, 362).

We believe that this states the proper approach to issues of waiver of any constitutional guaranty. The justification for such a view is not far to seek. It rests on the plain fact of human experience that rights easily waived are rights easily lost.

The problem of validation of searches and seizures through the alleged consent of a defendant was recently given exhaustive consideration in the annotation "Validity of Consent to Search Given By One In Custody of Officers," 9 ALR 3d 858. It states at pp 864, 865:

"It cannot be emphasized too much that the determination of the sufficiency of a consent to a search as affected by the status of the consenter as in custody, depends upon the particular facts and circumstances of each case, and that there are no hard rules by which the presence of a certain fact (in addition to custody) will bind the court to a particular decision."

It seems to be recognized generally that mere detention by the police will not prevent a sufficient consent. This is the accepted view in Michigan. *People* v. *Bradley* (1928), 243 Mich 609. What additional elements will render invalid an alleged consent to a search has been the subject of a spate of decisions. See cases cited in 9 ALR 3d 858, *et seq.*, *supra*. In holding illegal a search and seizure based on alleged consent, the Supreme Court in *People* v. *Kaigler* (1962), 368 Mich 281, pointed out one consideration at p 294:

"It is elementary that the obtaining of a search warrant may be waived by an individual and he may give his consent to search and seizure; but such waiver or consent must be proved by clear and positive testimony *and there must be no duress or coercion, actual or implied, and the prosecutor must show a consent that is unequivocal and specific, freely and intelligently given. Karwicki v. United States* (CA 4), 55 F2d 225; *Kovach v. United States* (CA 6), 53 F2d 639. *The burden for the prosecution is particularly heavy where the individual is under arrest. Judd v. United States,* 89 App DC 64 (190 F2d 649); *Amos v. United States,* 255 US 313 (41 S Ct 266, 65 L ed 654)."

Yet the Court has indicated that the addition of actual arrest to custodial detention does not *per se* prohibit valid consent to a search. In *People* v. *Zeigler* (1960), 358 Mich 355, the Court observed at pp 363, 364:

"This is not to say that under certain circumstances it may not be held that a person has waived his constitutional rights, while under lawful arrest, by voluntary giving of consent to what otherwise would be an unlawful search or seizure. As the court observed in *Zap,*[1] however, the law of searches and seizures, as revealed in that Court's decisions, is the product of the interplay of the 4th amendment's guaranty against unreasonable search and seizure and the 5th amendment's guaranty that no person shall be compelled in any criminal case to be a witness against himself, its dual purpose being to protect the privacy of the individual and to protect him against compulsory production of evidence to be used against him."

The Court went on, by way of dictum, to say at pp 364, 365:

---

[1] *Zap* v. *United States* (1946), 328 US 624, 628 (66 S Ct 1277, 1279, 90 L ed 1477, 1481, 1482).

"And so, with respect to incriminating evidence, other than confessions, obtained by search and seizure, under a conceivable showing of facts, such as, *inter alia*, that the accused was first advised of his rights, *informed that he need not submit to a search and that, if he did, the fruits thereof would be used in evidence against him*, his consenting to the search and seizure may well, in the absence of contrary indications, be held to be voluntary, not an involuntary act secured under coercion, and, hence, a waiver of his constitutional rights, rendering such evidence admissible." (Emphasis supplied.)

The following are the facts produced at the time of the hearing in the absence of the jury. Defendant had told the Detroit police he had not slept the night before; if true, this means that he had been awake for at least 30 consecutive hours before he allegedly gave his permission to search the car. In addition, he had been in custody and under arrest for approximately 5 to 7 hours, and had been subjected to progressively intense questioning since at least the ride to Detroit from Pontiac. There was testimony concerning an attempt by defendant to contact a lawyer and defendant claims he indicated a desire to see a lawyer before answering questions, yet no attorney was present during the interrogation in police headquarters. Defendant denied having given any consent to the search and denied having been informed of his constitutional rights. On the other hand, the police detective who conducted the questioning stated:

"I told him there was some information and evidence against a man named Grant Shaw; and if he was this man, he had a right not to answer my questions under the State and Federal Constitution. I also told him that if he was innocent of these charges,

he would be given an opportunity to tell me where he was, if he was not involved in this matter, and I would work just as hard to see to it he got out of jail as I did to see to it that he got into jail. I believe that's pretty close to my exact wording."

See the language quoted from *People* v. *Zeigler, supra.*

Speaking of the prosecution's burden of proving free, voluntary, intelligent, and specific consent, the United States Court of Appeals for the District of Columbia has said:

"This burden on the Government is particularly heavy in cases where the individual is under arrest. Nonresistance to the orders or suggestions of the police is not infrequent in such a situation; true consent, free of fear or pressure, is not so readily to be found. * * * In fact, the circumstances of the defendant's plight may be such as to make any claim of actual consent 'not in accordance with human experience', and explainable only on the basis of 'physical or moral compulsion'." *Judd* v. *United States,* 89 App DC 64, 66 (190 F2d 649, 651).

We regard it as next to incredible that a man, while firmly denying he killed another, would freely consent to a search which he knows will be likely to uncover evidence indicating his perpetration of the crime. This, together with the other circumstances we have recited above, leads us to conclude that there was no real consent to this search. Therefore, the articles seized thereby should not have been admitted into evidence. *Mapp* v. *Ohio* (1961), 367 US 643 (81 S Ct 1684, 6 L ed 2d 1081, 84 ALR 2d 933). The conviction must be vacated and the case remanded for a new trial.

Defendant makes two other claims on this appeal which require attention, since the issues will very likely arise again on the new trial. Error is alleged in the admission of evidence of prior acts of the

defendant and the admission of a statement made by defendant to Detroit police officers.

Evidence of prior acts of a criminal defendant may be relevant to a showing of motive for commission of the crime charged.[2]  The burden is upon the prosecution to demonstrate to the trial judge the relevance of the proffered evidence. *People* v. *Askar* (1967), 8 Mich App 95.  Despite its relevancy it should be excluded where probative value is outweighed by attendant prejudice to the defendant. The assessment of the relative weight of these two factors is within the discretion of the court.

Where intent or motive is material and relevant, the mere fact that the prior act is itself a crime does not render the evidence inadmissible. *People* v. *Allen* (1958), 351 Mich 535.  Proof of motive is highly relevant in a case such as this where there are no eyewitnesses and the prosecution's case is necessarily a circumstantial one.  Defendant's interests must be weighed heavily, however, where the motive is evidenced by criminal acts.  The problem is most acute and the inflammatory tendency of such evidence most pronounced where the act is an alleged rape of decedent's wife by defendant.  Such is the case here.

We are not now disposed to rule that it would be as a matter of law an abuse of discretion for the trial court to admit such evidence.  However, "we perceive it to be incumbent upon the trial court, whether or not so requested by the defendant, to instruct the jury immediately that the evidence was admitted for a specific purpose and that they shall consider it only for that purpose." *People* v. *Askar, supra,* at p 101.  Anything less would be unnecessarily detrimental to the defense.

Defendant also contends that prejudicial error was committed in the admission of statements made to

---

[2] CL 1948, § 768.27 (Stat Ann 1954 Rev § 28.1050).

homicide bureau detectives during the night of December 30–31, 1964. Authority for such a position is found in *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L ed 2d 694, 10 ALR 3d 974). *Miranda* is inapplicable to trials held prior to the decisional date: June 13, 1966.[3] Therefore, this issue is to be decided under the law applicable in August of 1965, *i. e.*, *Escobedo* v. *Illinois* (1964), 378 US 478 (84 S Ct 1758, 12 L ed 2d 977).

The applicability of the *Escobedo* exclusionary rule depends upon a "request and denial" of consultation with an attorney. *People* v. *Castelli* (1967), 7 Mich App 1, and cases cited therein. We do not think that at the *Walker* hearing[4] below the trial court adequately explored the possibility that defendant had, in effect or explicitly, requested the presence of his attorney, Milton Henry, and that the actions of the police detectives constituted a denial of that request. If further consideration should indicate that there was a request and denial here, defendant's statements made thereafter might well be inadmissible under *Escobedo*.

A further allegation of error, namely that the trial judge conducted the proceedings in a manner hostile to the defense counsel, resulting in prejudice to the defendant, does not merit extended discussion here. We merely note the trial judge's statutory duty[5] to control all aspects of trials and that where clear abuse of discretion in this matter is shown, convictions cannot stand. Here, however, the record fails to support this allegation.

Conviction vacated; cause remanded for a new trial.

T. G. KAVANAGH and WEIPERT, JJ., concurred.

---

[3] *Johnson* v. *New Jersey* (1966), 384 US 719 (86 S Ct 1772, 16 L ed 2d 882).

[4] *People* v. *Walker* (On Rehearing, 1965), 374 Mich 331.

[5] CL 1948, § 768.29 (Stat Ann 1954 Rev § 28.1052).