PEOPLE v. KELLY

1. CRIMINAL LAW — RAPE — EVIDENCE — SEPARATE OFFENSE — METHOD OF OPERATION.

Testimony concerning the commission of a criminal offense separate from the offense for which defendant is being tried is admissible when offered to show defendant's scheme, plan or method of operation; therefore where defendant was accused of entering a motel room and raping and robbing the occupant, it was not improper for the trial court to allow a witness to testify that on a separate occasion defendant had entered the witness's motel room and raped and robbed the witness (MCLA § 768.27).

2. CRIMINAL LAW — EVIDENCE — SEPARATE OFFENSE — SIMILAR OFFENSES — PREJUDICIAL TESTIMONY — DISCRETION.

The discretion of the trial court was properly exercised in denying defendant's motion for mistrial, which was based upon the admission of testimony concerning a separate criminal offense by defendant, where the court refused to pass on the credibility of witnesses in question but determined that there was sufficient similarity between the offense charged and the separate offense to admit into evidence testimony relevant to the separate offense and decided that the probative value of the contested testimony concerning the separate offense far outweighed the prejudicial effect of the testimony.

3. CRIMINAL LAW — EVIDENCE — WEAPONS — ADMISSIBILITY — CONNECTION.

A gun found on defendant when he was arrested was properly admitted into evidence at his trial for rape and armed robbery where the complaining witness testified he used a gun and another witness also testified that, on another occasion, defendant had used a gun to rape and to rob her, because it might

REFERENCE FOR POINTS IN HEADNOTES
[1–5] 21 Am Jur 2d, Criminal Law § 320 et seq.

have been reasonably inferred that the gun was connected with the offenses charged.

4. CRIMINAL LAW — EVIDENCE — SIMILAR OFFENSES — LIMITING INSTRUCTION.

Absent a miscarriage of justice, the trial court did not commit reversible error by failing to give immediately a jury instruction limiting the purpose for which testimony regarding defendant's prior commission of like acts of rape and robbery could be considered where the court, although unrequested, gave a thorough and detailed instruction in its charge in chief regarding the limited purpose for which that testimony was received and for which it could be considered.

5. CRIMINAL LAW — EVIDENCE — PRIOR SEXUAL OFFENSES — ADMISSIBILITY.

The special requirements relating to admission of evidence of a defendant's prior sexual offenses against persons other than the complaining witness are not applicable where defendant was charged with rape and robbery armed.

Appeal from Recorder's Court of Detroit, Geraldine Bledsoe Ford, J. Submitted Division 1 June 15, 1970, at Detroit. (Docket No. 7,371.) Decided August 25, 1970. Leave to appeal granted October 27, 1970. 384 Mich 771.

John Robert Kelly was convicted of rape and robbery armed. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief Appellate Lawyer, and *Leonard Meyers,* Assistant Prosecuting Attorney, for the people.

*Arthur J. Tarnow* (Defenders' Office—Legal Aid and Defender Association of Detroit), for defendant on appeal.

Before: McGregor, P. J., and J. H. Gillis and
O'Hara,* JJ.

O'Hara, J. On July 16, 1968, defendant was found
guilty by a jury in Recorder's Court for the City of
Detroit, the Honorable Geraldine Bledsoe Ford
presiding, of the felonies of carnal knowledge of a
female with force against her will, MCLA § 750.520
(Stat Ann 1962 Rev § 28.788), and robbery armed,
MCLA § 750.529 (Stat Ann 1962 Rev § 28.797). On
July 31, 1968, defendant was sentenced to a term of
30 years to life on each charge; the sentences to
run concurrently. On April 10, 1969, the sentences
were amended to a term of 30 years minimum to 35
years maximum. No motion for new trial having
been made, claim of appeal was filed on May 14, 1969.

Defendant was tried for the rape and armed rob-
bery of one Hattie Jeffery. The incident allegedly
occurred on August 26, 1967 at the Rio Grande Motel
located in Detroit. Mrs. Jeffery identified defend-
ant as the man who burst into her room at the motel
at 7 a.m. on the above date, ordered her at gun
point to put a pillow case over her head, and pro-
ceeded forcibly to have sexual relations with her
twice. He took some $74 in cash and a tape recorder
from her upon leaving.

Defendant based his defense upon alibi. He took
the stand in his own behalf.

In rebuttal to defendant's testimony, the prose-
cutor requested that he be allowed to call a witness
who might reveal the commission of another crime
for the purpose of showing a common scheme, plan
or method of operation by the defendant. Cecilia
Coleman testified that on March 16, 1968, she and

_____

* Former Supreme Court Justice, sitting on the Court of Appeals
by assignment pursuant to Const 1963, art 6, § 23 as amended in
1968.

Anderson Johnson were occupying room 29 of the Oaks Motel in the City of Detroit. At approximately 7:30 a.m. a man appeared in their room with gun in hand. He ordered them to put pillow cases over their heads. He locked Mr. Johnson in the bathroom and raped Miss Coleman three times. He then took some $75 in cash and Mr. Johnson's watch. Miss Coleman identified defendant as the man who had raped her and identified the gun as looking like the gun defendant had used in the motel room. The gun was received in evidence.

Also among the exhibits received were keys found in the possession of defendant at the time of his arrest. The keys fitted the doors of various rooms in the Oaks Motel, the Rio Grande Motel and the Algiers Motel. One of the keys fit room 29 of the Oaks Motel, the room occupied by Miss Coleman and Mr. Johnson.

Defendant assigns error in the admission of the testimony of the alleged separate offenses, failure to instruct the jury immediately as to the limited purpose for which the testimony was admitted, failure to grant a motion for a mistrial on that ground, and admitting in evidence the gun found on defendant at the time of his arrest.

The testimony of the separate offense was offered to show a scheme, plan or method of operation pursuant to MCLA § 768.27 (Stat Ann 1954 Rev § 28.1050), which provides:

"In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved, whether

they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant."

After hearing the arguments of counsel out of the presence of the jury, the trial court admitted the testimony, at the same time admonishing the assistant prosecuting attorney that "if you are talking about a scheme or plan or general device, * * * testimony * * * must very closely parallel the testimony of your complaining witness in this case." The admonishment was well-advised and under the statute, the trial court's ruling was proper.

Similarly, the trial court's denial of defendant's motion for a mistrial was proper. Defense counsel objected that the prejudicial effect of the testimony outweighed its probative value. In denying the motion, the trial court ruled:

"I would say, without passing on the matter of credibility, which certainly is not my province in this trial, but only mere testimony and comparing the testimony of the witness—again, I don't pass on the matter of credibility—that is a matter for the jury—but I do find as a matter of fact that the evidence offered by the people does very much comport with the standards set out in the statute in that there is a unique mode of operation, if the witnesses are to be believed. And there are many similarities between the two witnesses. And I think that, as I say, if the witnesses are to be believed, that the operation was so similar that it would qualify. And I understand the matter of prejudice.

"But I would find as a matter of fact that the probative value of the testimony by far outweighs the prejudicial effect. And I do not discount that, Mr. Gardner. But I think that the probative value much outweighs—in terms of what I believe you are trying to achieve—much outweighs the prejudicial effect."

The ruling reveals sound discretion clearly and properly exercised by the trial court. *People* v. *Shaw* (1968), 9 Mich App 558. There was no error.

The assignment of error as to the inadmissibility of the gun into evidence is without merit. There was testimony that the defendant was armed on both occasions and it might have been reasonably inferred that the weapon was connected with the offenses charged.

However, the assignment of error which raises the question of major significance to our jurisprudence is whether the trial court, upon admitting the testimony of the separate offense, was obligated *instanter* to give the instruction as to the limited purpose for which the jury could consider it, irrespective of whether a request was made therefor. This question demands a discussion of the holdings of this court in several prior cases.

These cases are: *People* v. *Askar* (1967), 8 Mich App 95; *People* v. *Shaw* (1968), 9 Mich App 558; *People* v. *Camel* (1968), 11 Mich App 219; *People* v. *Anderson* (1968), 13 Mich App 247; and *People* v. *Stevens* (1970), 25 Mich App 181.

The question by its nature divides itself into three necessary subquestions.

First: When testimony of a separate offense is permitted under the statute, must the limiting instruction be given *irrespective of a request therefor?*

Second: If the instruction is mandatory irrespective of a request therefor, must it be given *immediately* after the testimony is received or may the instruction be included in the general charge at the conclusion of the proofs?

Third: Is there a difference as to when the instruction must be given dependent upon the type of offense with which the defendant is charged?

We begin the examination with *Askar* which is first in point of decisional time. *Askar* was a prosecution for sodomy. Relying on two prior Supreme Court decisions, this court held that the statute permitting proof of a separate crime did not apply at all, in this explicit language:

"[w]e hold that the statutory exception[1] to the general rule does not apply to the case at bar." *Askar, supra,* pp 100, 101.

This court thereafter undertook a discussion of other exceptions to the "rule" (without referring specifically to the statute) in prosecutions for "certain sexual crimes." Decisionally speaking, again the court held:

"In the case at bar there was no showing by the prosecutor of a proper ground for admitting evidence of prior offenses * * * . Consequently, evidence of prior offenses by defendant was erroneously admitted and a new trial must be ordered." *Askar, supra,* pp 101, 102.

However, prior to ruling the evidence inadmissible, the court observed at page 101:

"Moreover, once the requisite showing has been made and the evidence admitted, we perceive it to be incumbent upon the trial court, whether or not so requested by the defendant, to instruct the jury immediately that the evidence was admitted for a specific purpose and that they shall consider it only for that purpose."

Having ruled the evidence inadmissible, what the court had to say about the requirements in a case in which it was admissible must, of course, be regarded as a prime example of *obiter dicta.* Thus, it cannot

---

[1] MCLA § 768.27 (Stat Ann 1954 Rev § 28.1050) earlier set forth herein.

be said that *Askar* stands for anything so far as instructional requirements are concerned. Reversal could not have been predicated upon any failure to instruct immediately or otherwise, since the court bottomed its reversal on the admission of the evidence itself.

The court later in the opinion again decisionally held:

"[t]his conduct [improper jury argument] * * * vitiated the whole process of trial." *Askar,* p 104.

Nowhere in *Askar* did the court speak decisionally to the instructional requirements. It stands as a conviction reversed for erroneous reception of evidence and erroneous jury argument by the prosecuting attorney.

*People* v. *Shaw, supra,* at first reading, seems however to have elevated the *Askar* dicta to decisional level. *Shaw* was a prosecution for murder. Again this Court makes a precise decisional holding, *i.e.*:

"Defendant contends that reversible error was committed in several respects during this lengthy trial. We deal fully with only one of these, the search and seizure issue, *which alone warrants a new trial.*" *Shaw, supra,* p 560. (Emphasis supplied.)

It is not completely clear whether "alone" means the only error which warrants a new trial, or whether it means irrespective of other reversible error. To the extent that *Shaw* is involved here, this court held:

"Evidence of prior acts of a criminal defendant may be relevant to a showing of motive for commission of the crime charged." *Shaw, supra,* p 566.

At this point this Court footnotes the statute we deal with here. MCLA § 768.27 (Stat Ann 1954 Rev

§ 28.1050). The Court then goes on to discuss another limitation on the statute:

"Despite its relevancy it [the evidence of a separate offense] should be excluded where probative value is outweighed by attendant prejudice to the defendant. *The assessment of the relative weight of these two factors is within the discretion of the [trial] court.*" (Bracketed material and emphasis supplied.)

Thus, the immediately preceding quoted *Shaw* language can be read as dicta or as a decisional holding, leaving the question open for further writing. For our purpose we need not (if indeed we can as another panel of the same court) decide which it is. Thus, we leave Shaw[2] as we found it.

*People* v. *Camel, supra,* was a conviction of larceny in a building. In that case evidence of the defendant's prior confinement in Jackson prison came in first via the *Walker* hearing route and upon the trial in chief was again elicited by the prosecuting attorney. The majority in the *Camel* case held that when the testimony was allowed reversible error was committed and *the motion for a new trial* should have been granted. This holding seems to be based on the fact that the testimony was not "germane to the people's case." Judge QUINN, in strong dissent, wrote to the point that the objectionable and (*sic*) prejudicial testimony came into the case inadvertently: that is, was not a planned maneuver by the prosecuting attorney, and that the prejudice could easily have been cured by a requested instruction. Judge QUINN held, absent such request, the error, if any, was not reversible error.

---

[2] Discussion is not given to *People* v. *Flansburgh* (1970), 24 Mich App 470, for the reason that *Flansburgh* relied upon *Shaw* without further analysis.

Next in chronology is *People* v. *Anderson, supra.* This was a prosecution for illegal sale of narcotics. In that case an undercover police informer testified to two purchases of heroin from the defendant. One was on November 25, 1960, upon which the prosecution was based. Testimony was admitted that "two or three months before" another illegal purchase had occurred. In this case a specific objection to testimony of the prior sale was made. Citing the statute, this court held the evidence inadmissible. Then the court addressed itself to the question of the instructional question we here consider. The *Anderson* panel held decisionally:

"Defendant asserts as error the trial court's failure to give an instruction limiting the jury's consideration of the police informer's testimony of the alleged prior offense. *Defendant did not request such an instruction, nor was any objection made pursuant to GCR 1963, 516.2.*" (Emphasis supplied.)

The cited court rule holds that no party may assign error for the giving or failure to give an instruction unless objection is made thereto before the jury retires.

The *Anderson* panel then goes on to hold:

"In the absence of a request or proper objection, the trial court was not required to give the limiting instruction." *Anderson, supra,* p 250.

In candor, it must be said that the *Anderson* holding is contrary to the thrust of all of the language relating to the precise point which is found in the other cases examined. It would appear the *Anderson* panel read the *contra*-language as *dicta* or felt itself not bound thereby for whatever reason, no panel of this court being able precedentially to bind another. The situation is akin to that which arises

in the Federal court system where different holdings by different circuit courts of appeal occur.

Our situation is basically different because the *nisi prius* bench of our state is not districted jurisdictionally as are the Federal district courts. Hence, it is our duty strenuously to avoid holdings contrary to those of other panels of this Court where at all possible.

The last case we must examine is *People* v. *Stevens* (1970), 25 Mich App 181.

In that case, the prosecution was for receiving stolen property. Testimony was admitted, specifically under the statute of a similar prior separate offense. The testimony was ruled admissible and the *Stevens* panel held:

"Defendant asserts that the trial court erred in failing to immediately instruct the jury as to the limited purpose for which such evidence can be used."

Decisionally, the *Stevens* panel held:

"We rule in accord with our understanding of the decision in the case of *People* v. *Nawrocki* (1965), 376 Mich 252, * * * that such instruction need not be given unless requested." *Stevens, supra.*

Thus, the *Stevens* panel and the *Anderson* panel are in accord.

We find ourselves therefore free to hold either way on the precise instructional question: Because our decision has no greater precedential effect than those heretofore discussed, we eschew any discussion of the legal philosophical implications of our decision. In this case Judge Ford, although unrequested, gave a very thorough and detailed instruction as to the limited purpose for which the

testimony was received and for which it could be considered. She gave it, however, at the end of the proofs in her charge in chief, and not *instanter* as the language of *Askar* and the cases relying thereon seem to require. Precedent both ways existing, we look to any indication of a miscarriage of justice in the case at bar. We find none. We hold failure in this case to give instruction *immediately* upon admission of the testimony was not reversible error. We hold not to give the instruction at all, whether requested or not, *is* reversible error. We hold that since defendant was charged with both a "sex" crime and robbery armed, the special requirements relating to "certain sex offenses" is inapplicable. We recommend to the trial bench that in the prosecution for "certain sex offenses" the holdings of the Supreme Court concerning the admission of evidence of separate offenses be examined with care before admitting the evidence.

We do suggest, though unable so to hold precedentially, that a prudent practice by the trial bench would be to give the required instruction after the foundation for testimony of a separate offense is properly laid and the court has decided in its discretion to admit it, and before it is received. There is, of course, no harm in adverting to it again in the charge in chief.

Affirmed.

All concurred.