PEOPLE v McPHERSON

1. Criminal Law—Double Jeopardy.

A third criminal trial on the same set of facts as the prior two
trials does not not constitute double jeopardy where the first
trial resulted in a conviction of assault with intent to rape,
a new trial was ordered, the second trial resulted in a con-
viction of rape wihch was reversed on appeal, and the third
trial resulted in a conviction of assault with intent to rape
where the third trial was only on the charge of assault with
intent to rape.

2. Rape—Assault—Evidence of Completed Crime.

Allowing testimony in defendant's trial on a charge of assault
with intent to commit rape indicating that the rape had been
completed did not constitute a miscarriage of justice where
the defense elicited the testimony concerning penetration and
made no objection to the prosecution's eliciting testimony on
the subject.

3. Criminal Law—Evidence—Prison Record—Res Gestae State-
ments.

A prosecution witness testifying that the defendant had said,
"Next time I go to Jackson [site of Southern Michigan
Prison], it will be for something", was not a ground for a
mistrial where the statement showed the circumstances of the
witness's fear of defendant and why she did not refuse to
bring her daughter, the victim of the assault charged, to the
defendant, and the statement of the defendant was made
just before the assault charged occurred because the state-
ment was part of the res gestae.

References for Points in Headnotes

[1] 21 Am Jur 2d, Criminal Law § 165 et seq.
[2] 44 Am Jur, Rape § 21 et seq.
[3] 29 Am Jur 2d, Evidence § 708 et seq.
[4] 44 Am Jur, Rape § 79 et seq.
    29 Am Jur 2d, Evidence § 298 et seq.

4. RAPE—ASSAULT WITH INTENT TO RAPE—EVIDENCE—SIMILAR ACTS.
   Intent is at issue in a trial for assault with intent to commit rape; therefore, evidence of subsequent similar acts can be used to prove intent (MCLA 768.27).

5. CRIMINAL LAW—EVIDENCE—SIMILAR ACTS—INTENT.
   Evidence of a subsequent similar act in defendant's trial for assault with intent to commit rape to show why the complainant had contacted the police did not result in reversible error where the evidence was admissible to show intent (MCLA 768.27).

6. CRIMINAL LAW—EVIDENCE—SIMILAR ACTS—INSTRUCTIONS TO JURY.
   Failure to instruct the jury to consider evidence of subsequent similar acts only as to the issue of intent was not error where the defendant failed to request such a charge, did not object to the failure to give a limiting charge, and the trial was held prior to the Michigan Supreme Court decision of December 21, 1971 (*People v Kelly*, 386 Mich 330).

7. CRIMINAL LAW—EVIDENCE—SIMILAR ACTS—INSTRUCTIONS TO JURY —LIMITING INSTRUCTIONS.
   Failure to give an instruction to the jury limiting the use of evidence of similar acts, admitted in a prosecution for assault with intent to rape, to show intent, was harmless error where the prosecutor did not go into the details of the subsequent act and the evidence of defendant's guilt was overwhelming.

Appeal from Recorder's Court of Detroit, George W. Crockett, Jr., J. Submitted Division 1 December 13, 1971, at Detroit. (Docket No. 10773.) Decided February 24, 1972. Leave to appeal applied for.

Willie J. McPherson was convicted of assault with intent to commit rape. New trial granted. Defendant was convicted of rape. Defendant appealed. Reversed, 21 Mich App 385 (1970). Defendant was convicted of assault with intent to commit rape. Defendant appeals. Affirmed.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, *William L. Cahalan*,

Prosecuting Attorney, *Dominick R. Carnovale,*
Chief, Appellate Department, and *Luvenia D. Dock-
ett,* Assistant Prosecuting Attorney, for the people.

*Arthur J. Tarnow,* State Appellate Defender, and
*Jane Burgess,* Assistant Defender, for defendant.

Before: HOLBROOK, P. J., and T. M. BURNS and
DANHOF, JJ.

HOLBROOK, P. J. This is an appeal from defend-
ant's jury conviction of assault with intent to com-
mit rape (MCLA 750.85; MSA 28.280) following his
third trial in the Recorder's Court for the City of
Detroit on charges arising out of the same occur-
rence.

Originally, defendant was tried for the crime of
rape (MCLA 750.520; MSA 28.788) and convicted
of the crime of assault with intent to commit rape
by the recorder's court judge sitting without a
jury. On a motion for new trial, the judge, because
he had been the prosecuting attorney at the time
of the filing of the information, ordered a new trial
for the defendant. Upon his second trial before a
jury, the defendant was charged with, and con-
victed of, the crime of rape.

The defendant having been acquitted of the crime
of rape on his first trial, our Court set aside the
second conviction and remanded for a new trial.
*People v McPherson,* 21 Mich App 385 (1970). On
this appeal defendant raises five issues for deter-
mination.

## I

Was defendant's right to be protected from being
twice put in jeopardy for the same acts, as guar-
anteed by the Fifth and Fourteenth Amendments

of the United States Constitution, violated because defendant was subjected to a trial, the scope of which defendant had already been acquitted?

Defendant argues that his trial, while not formally on a charge of rape, violated his right to be free from twice being put in jeopardy for the same act because the scope of his trial included the elements of rape, an offense of which he had already been acquitted.

The people argue that the defense was responsible for bringing in evidence of rape and, in addition, that no objection was made to the testimony.

Defendant's reason for claiming that the scope of the prosecution was too broad is that there was evidence of the element of penetration introduced into the trial. The crime of rape requires the element of penetration while the crime of assault with intent to rape does not.

As the primary authority for his argument, defendant cites *United States ex rel. Hetenyi* v *Wilkins,* 348 F2d 844, 867 (CA2, 1965), *cert den,* 383 US 913; 86 S Ct 896; 15 L Ed 2d 667 (1966). In *Wilkins,* petitioner was tried three times for first-degree murder. The first trial resulted in a jury conviction of second-degree murder, the second of first-degree, and the third of second-degree. In all three, the jury was told it could find petitioner guilty of first-degree murder, second-degree murder, first-degree manslaughter, or not guilty. Since after the first trial, the greatest offense he could constitutionally be tried for was second-degree murder, the prosecution for first-degree constituted double jeopardy. In the instant defendant's first appeal, this Court agreed fully with this reasoning. *People* v *McPherson, supra.* In *Wilkins,* the final order of the Federal court states:

"The order below  *  *  *  is reversed, with instructions that the writ [habeas corpus] be granted unless, within a reasonable time, New York affords Hetenyi a new trial that conforms to the principles set forth in this opinion."

Therefore, in *Wilkins* the trial court was permitted to try defendant therein for the fourth time for the crime of second-degree murder. Likewise, in this case, defendant was properly tried for the crime of assault with intent to rape.

Defendant cites two specific instances during trial where testimony to the higher offense was given: (1) On direct examination by the prosecutor of the alleged victim (stepdaughter of defendant) of the assault, the following transpired:

"*Q.* Then what did he do after he got in the bed?
"*A.* He laid on top of me.
"*Q.* Did you make any effort to push him away?
"*A.* Yes.
"*Q.* What did he say when you did that?
"*A.* He told me, 'Don't push anymore.'
"*Q.* Did he say what he would do if you did it?
"*A.* He said that he was going to kill me. But I kept pushing him.
"*Q.* Now did you—did he at anytime that you could see make—take his private parts from under his clothing?
"*A.* Yes.
"*Q.* Did he make any effort to place his private parts inside your private parts?
"*A.* Yes.
"*Q.* Did you feel his private parts in connection with your private parts?
"*A.* Yes.
"*Q.* Then what happened?
"*A.* He finished. He got up.
"*Q.* All right, then what did he do and what did you do?
"*A.* I went in the bathroom with my mother.

"*Q.* Well, describe your condition at the time, the way you felt, the way you behaved.

"*A.* I was hurt."

(2) On cross-examination of the same witness by defense counsel the following took place:

"*Q.* Have you ever had sexual relations before December 18, 1966?

"*A.* No.

"*Q.* Are you telling us then when your stepfather inserted his private parts into you that you were in pain, that you were hurt?

"*A.* Yes.

"*Q.* Did you tell your mother this?

"*A.* Yes.

"*Q.* Was there any blood?

"*A.* Yes.

"*Q.* Where?

"*A.* It was on the bed and on me."

It is important to note that defense counsel made no objection to the direct testimony and, additionally, he elicited testimony as to penetration on cross-examination. Normally, failure to object precludes raising the issue on appeal absent a miscarriage of justice. *People v Panknin,* 4 Mich App 19 (1966). There appears to be no such miscarriage of justice here.

Defendant also contends that he was prejudiced by the court's jury charge which set out the elements of the crime of assault with intent to commit rape, *i.e.,* that the judge put too much emphasis on the term "rape" as used in the element of intent. Upon reading the judge's instructions, the term "rape" does not appear to be overly emphasized. It is only used in explaining the element of intent. The gist of the offense of assault with intent to rape is intent. *People v Petty,* 234 Mich 282 (1926). In ad-

dition, defense counsel, when asked if there were any objections to this charge, replied, "no objections". Absent manifest injustice, failure to object to an instruction at trial precludes appellate review. GCR 1963, 516.2; *People v McClure*, 29 Mich App 361 (1971). There was no manifest injustice in the the court's charge in the instant case.

## II.

Do defendant's three trials and continuing imprisonment constitute sufficient jeopardy so that a retrial would be in violation of the double jeopardy prohibition of the United States Constitution?

Defendant asserts that should this Court reverse and remand for a new trial, it would subject him to "continuing anxiety and insecurity" which the constitutional double jeopardy provision seeks to prevent.

The people counter with the assertion that no prejudice would result from a new trial since it would be for defendant's benefit.

Defendant's position is untenable because in the case cited by him, *Wilkins, supra,* the Court gave the State of New York the right to try the petitioner for the fourth time, under prescribed reasonable conditions. *Wilkins* is applicable to the instant case.

## III.

Did the trial court err in failing to grant a mistrial because of the possible prejudicial effect of the statement as to defendant's prior imprisonment?

Defendant argues that the statement made by complainant's mother in regard to defendant having previously been in "Jackson" was so prejudicial that a mistrial should have been granted.

The people assert that the statement was merely part of the *res gestae* and was relevant to show a

part of the transaction and why complainant's mother was in such fear that she could not stop defendant's attack upon her daughter.

The statement complained of on appeal was made by complainant's mother on direct examination by the prosecutor. The context in which it took place follows:

"*Q.* I am directing your attention back to the date of Sunday, December 18, '66. Do you remember that day?

"*A.* Yes, sir.

"*Q.* Did you go to—what time did you go to bed that day?

"*A.* I went to bed early.

"*Q.* What time?

"*A.* I couldn't exactly say what time.

"*Q.* I mean as best as you can remember.

"*A.* I can't say for sure whether it was after 12 o'clock or before.

"*Q.* I see. Was your husband home at that time?

"*A.* No, sir.

"*Q.* What about the children, any of the children? Did they stay awake after you went to bed?

"*A.* They was in bed before I was.

"*Q.* They went to bed before you. Now while you were sleeping did anything happen to wake you up?

"*A.* No, sir. Except that my husband, he came in about three or four o'clock that morning.

"*Q.* And tell us what happened when he came in.

"*A.* Well, he just came in, and as I woke up, like I usually do, and he came in and undressed and got to bed, got into bed, and he started having sexual relationships with me. And the whole time he was having it, he was asking me questions about did I love him, and I said, 'Why, sure.' I said, 'Why do you ask me something like that, did I love you.' He said, 'I want to know do you love me.' I said, 'Yes, I love you.' He said, 'There is something I want you to do.' I asked him what could I be doing this time of night. He said, 'You're going to do it regardless.

You're going to do it.' And I asked him, 'What?'
You're going out and get out this bed and go in and
tell * * * [name of victim] to come here.' I
said, 'Tell * * * [name of victim] to come here,
for what?'

"*Q.* Just tell it slowly. Just the way it happened.
"*The Court*: Would you get some water for the
witness.
"(Court officer Johnson brought a cup of water
to the witness.)
"*A.* I said, '*Tell* * * * [name of victim] to come
here for what?' He said, 'You just do what I said.
Tell her I said "Come here." ' I said, 'I'm not going
to do nothing like that.' I said, 'What's wrong with
you?' I said, 'You talk crazy.' He said, 'You just do
what I tell you to do.' I said, 'I am not going to do
that.' He said, 'Oh, yes, you are. You're going to
do it or else.' I said, 'Or else what? He said, 'You're
going to do it.' I said, 'Oh, no.' I said, 'I'm not going
to do anything like that.' I said, 'You're crazy.' I
said, 'What's wrong with you?' I said, 'Why you
talking, acting like this?' He said, 'You just get her
out that bed and get her.' He said, 'If you don't,' he
said, 'If you don't get her,' he said, 'You're going to
wish you had, too.' He said—he said, 'You just—'
He said, 'Don't take too long doing it. I mean get
out there and get her. And you had better not wake
those kids.'

"And at that time I was so scared I didn't know
what to do. I jumped up before I knew it. He said,
'You go on in.' And he said, 'I mean you better not
wake them up.' He said, 'If you do, you will be
sorry.' He said, 'Because I don't care no more about
nothing.' He said, 'Next time I go to Jackson, it will
be for something.' So I go on in the room."

The defense counsel then moved for a mistrial which
was denied by the court. Defendant refers us to
the opinion of our Court in the first appeal of the
instant case[1] wherein it is stated at p 398:

---

[1] 21 Mich App 385 (1970).

"On remand all references to prior conviction or confinement except by proper evidentiary procedure are to be avoided."

This admonition was not in reference to the "Jackson" statement, but to a remark made by the prosecutor in closing argument. On p 398 in the same opinion our Court stated:

"It has long been settled law in this state that evidence of former convictions or confinement is inadmissible unless it is material and relevant to the issue being tried. *People* v *Fleish,* 321 Mich 443 (1948)."

Therefore, if the reference to "Jackson" is relevant and admissible under proper evidentiary procedure, then there is no error.

The people's contention is that the statement is part of the *res gestae* of the offense. In *People* v *Kayne,* 268 Mich 186, 191–192 (1934), the Court stated:

" '*Res gestae* are the circumstances, facts and declarations which grow out of the main fact, are contemporaneous with it, and serve to illustrate its character.' *Stirling* v *Buckingham,* 46 Conn 461.

" 'No inflexible rule has ever been and probably never can be adopted as to what is a part of the *res gestae.* It must be determined largely in each case by the peculiar facts and circumstances incident thereto; but it may be stated as a fixed rule that, included in the *res gestae* are the facts which so illustrate and characterize the principal fact as to constitute the whole one transaction, and render the latter necessary to exhibit the former in its proper effect.' *Chicago & E R Co* v *Cummings,* 24 Ind App 192, 209; 53 NE 1026, 1031.

" 'And as long as the transaction continues, so long do acts and deeds emanating from it become part of it, so that, describing it in a court of justice, they

can be detailed. * * * Nor are there any limits of time within which the *res gestae* can be arbitrarily confined (citing Wharton on Criminal Evidence [9th ed], § 262).' *Territory* v *Clayton,* 8 Mont 1; 19 P 293, 297."

See also *People* v *Noble,* 23 Mich App 100 (1970); 1 Gillespie Michigan Criminal Law & Procedure (2d ed), § 434, p 527. It is reasonable to conclude that the witness's statement was relevant in that it showed the circumstances and her fear of defendant and that defendant had a reason to carry out his threats of violence. Also, the statement was made just before the assault took place and was part of the continuing sequence of events surrounding the offense. It follows that the statement was properly introduced as part of the *res gestae.*

Defendant cites *People* v *Camel,* 11 Mich App 219 (1968), which is distinguishable on the facts. See also, *People* v *Greenway,* 365 Mich 547 (1962). In *Camel,* a prosecution for larceny, evidence of the defendant's prior confinement in Jackson prison came in first at a *Walker* hearing[2] and later by direct examination of the same witness by the prosecutor at trial. As in the instant case, defendant immediately objected, asked for the jury to be excused, and asked for a mistrial. This Court held that the failure to grant the motion for mistrial was reversible error. Its reasoning was as follows, at pp 222–223:

"In view of the prior testimony at the *Walker* hearing, the objectionable response by this witness could have been anticipated. Since the trial judge is charged with the ultimate duty to control the proceedings before him, and since he as well as the prosecutor failed to protect the defendant, when the

---

[2] *People* v *Walker,* 374 Mich 331 (On Rehearing, 1965).

damage was done by this testimony the court should
have granted the motion for mistrial."

An important difference between *Camel* and the in-
stant case is that in *Camel* the statement of prior
imprisonment was not "germane" to the people's
case, whereas, here, the reference to "Jackson" was
part of the *res gestae* and therefore "germane". See
*People* v *Fleish,* 321 Mich 443 (1948).

We rule that there was no error as to defendant's
issue three.

## IV.

Did the trial court err in allowing into evidence an
act similar and subsequent to the alleged act defend-
ant was charged with?

Defendant claims that the testimony by complain-
ant's mother as to a similar subsequent incident as
the one charged was improperly used by the prosecu-
tion to show intent, and that it should not have been
admitted to show reason to contact the police.

The people assert that the testimony was properly
admitted under the statute allowing proof of similar
acts to show intent.

The testimony complained of occurred in the fol-
lowing direct examination of Mrs. McPherson by the
prosecutor:

"*Q.* Well, what prompted you to get in touch with
the police at all, if you ever did?

"*A.* Well, I knew something had to be done, and
the incident—

"*Q.* What made you finally go to the police?

"*A.* Well another incident came up.

"*Q.* What do you mean by another incident?

"*A.* I had another incident with him that brought
it all out, because—

"*Q.* Did it have any connection with * * * [name
of victim]?

"*A.* Yes, sir.

"*Q.* What connection did it have with * * * [name of victim]?

"*A.* Well, this—let's see—this happened a couple days after this incident.

"*Mr. Sapala* [*defense counsel*]: Your Honor, I am going to object to any testimony about any subsequent incident, whatever it might be, in this case. I don't think it's material."

After giving the jury a general instruction about the effect that objections by attorneys should have on them, a conference was held at the bench. The prosecutor stated that his purpose for eliciting the testimony was not to show intent but to show what prompted the witness to call the police. The judge then overruled the objection. No instruction as to the limited purpose of the evidence was given nor was one specifically requested by defendant. The judge, with counsel still at the bench, stated his reasons for overruling the objection and warned the prosecutor to be careful as follows:

"I am aware, however, that we have a statute that permits you to show similar acts and circumstances as evidence of intent. And it's really in reliance upon that statute that I am overruling this objection, with the assurance by you that what you are going into here is evidence concerning another attempt to do an act of the same character as the one on which he is on trial. Is that right?"

The prosecutor answered in the affirmative and continued questioning the witness where he brought out the fact that the second incident was similar to the first.

" 'The general rule is well settled that in a criminal trial evidence of other, distinct offenses is not admissible even though they are of the same kind as the offense charged. *People* v *Schweitzer,* 23 Mich 301

(1871).' " *People* v *Heiss,* 30 Mich App 126, 130 (1971).

However, MCLA 768.27; MSA 28.1050 is a statutory exception to the general rule. It reads as follows:

"In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant."

Defendant contends that subsequent similar acts while relevant to show conspiracy, *modus operandi,* etc are not relevant to show intent. However, this Court in *People* v *Flansburgh,* 24 Mich App 470, 472 (1970), stated that "under the * * * statute * * * the prosecution is not allowed to introduce evidence of another and distinct offense by the accused unless the question of intent is at issue, whereby such evidence is admissible for the limited purpose of establishing a 'scheme, plan or system' ". Therefore, evidence of subsequent similar acts can be used to prove intent. In a prosecution for assault with intent to commit rape, intent, of course, is at issue. *People* v *Petty, supra.*

Defendant also contends that the disputed testimony could not be used to show the reason for contacting the police. He cites *People* v *Mooney,* 363 Mich 454 (1961), as authority. However, *Mooney* was a prosecution for gross indecency and evidence of other acts of gross indecency is not admissible

under the statute. *People* v *Heiss, supra.* In *Mooney,* the prosecution attempted to get this evidence in under the disguise of using it to show the circumstances leading to the defendant's arrest. The evidence was not otherwise admissible, whereas in the instant case it was. Therefore, the evidence of the subsequent "incident" in the case at bar was properly admitted under MCLA 768.27; MSA 28.1050.

## V.

Did the trial court err in not instructing the jury as to the relevancy of the evidence of a similar subsequent act?

Defendant now contends that even if the evidence discussed in the preceding issue is admissible, an instruction should have been given by the court as to its limited purpose, either immediately or at the close of proofs.

The people assert that no limiting instruction was necessary because none was requested nor was there any objection to the failure to give a limiting instruction by defendant as required by GCR 1963, 516.1, 516.2; and in addition, that error, if any, was harmless beyond a reasonable doubt because of the overwhelming evidence against defendant.

The most recent pronouncement by the Supreme Court on this precise question is set forth in the case of *People* v *Kelly,* 386 Mich 330 (1971), *aff'g People* v *Kelly,* 26 Mich App 148 (1970).

*Kelly, supra,* involved a conviction of defendant therein of the felonies of carnal knowledge of a female with force against her will (MCLA 750.520; MSA 28.788), and robbery armed (MCLA 750.529; MSA 28.797). Testimony was properly admitted of a previous similar crime under MCLA 768.27; MSA 28.1050, to show a scheme, plan, or system on the defendant's part in performing the acts.

In *Kelly, supra,* Mr. Justice WILLIAMS, speaking for the Court, stated in part as follows:

"The defendant contends that the trial court erred in failing to give immediately an instruction as to the limited purpose for which the jury could consider the evidence discussed in Part I of this opinion. The defendant argues that such an immediate instruction is necessary even if defense counsel does not request it.

"When the evidence to show a scheme, plan or system was introduced, the defense counsel did not request a limiting instruction, and the trial court gave no such instruction. In its final charge, however, the trial court did give very specific instructions to the jury as to what purpose that evidence could serve. The exact language which the trial court used is set out in the footnote below. [Footnote omitted.]

"In *People v Nawrocki,* 376 Mich 252 (1965), the prosecution introduced evidence of other offenses to show defendant's fraudulent scheme, plan or intent. Counsel for the defendant did not request a limiting instruction, and none was given at any time by the trial court. This Court affirmed the defendant's conviction in that case though no instruction was ever given, and stated:

" 'Defendant did not request any instructions which the court refused to give, nor did defendant call to the trial court's attention any objection to the instructions given.' 376 Mich 252, 255.

"Therefore this Court in *Nawrocki* required no limiting instruction at all, unless such instruction was requested by defense counsel. In the instant case, a specific limiting instruction was given in the final instructions to the jury, though it never was requested by defendant's attorney.

"The defendant cites *People v Askar,* 8 Mich App 95 (1967), for the proposition that when evidence is admitted to show scheme, plan or system, the trial court must *sua sponte* instruct the jury immediately that such evidence may be considered only for that

purpose. While *Askar* contains language to that effect, the decision in that case is based upon the fact that the evidence in question was inadmissible. Therefore the language concerning the necessity of immediate instructions is dicta. No case, court rule, statute, or treatise cited in *Askar* supports this dicta.

"The *Askar* opinion is not the sole expression of the Court of Appeals concerning this issue. In *People v Anderson*, 13 Mich App 247 (1968), prior illegal sales of narcotics were introduced as evidence to show a scheme, plan or system on the part of the defendant. No limiting instruction was requested by defense counsel, and none was given by the trial court. In affirming the defendant's conviction, a *Per Curiam* opinion stated:

" 'Defendant asserts as error the trial court's failure to give an instruction limiting the jury's consideration of the police informer's testimony of the alleged prior offense. Defendant did not request such an instruction nor was any objection made pursuant to GCR 1963, 516.2. In the absence of a request or proper objection, the trial court was not required to give the limiting instruction now sought. *People v Nawrocki*, 376 Mich 252 (1965).' 13 Mich App 247, 250.

"As he should in this case, the trial judge gave a limiting instruction which protected the rights of the defendant. There may be times when such limiting instruction should be more properly given at the time such evidence is introduced. However, in the absence of a specific request at that time or a showing of a miscarriage of justice, a limiting instruction in the final instructions to the jury will be deemed sufficient."

The question now arises as to whether the rule set down in *Kelly, supra*, is to be applied prospectively, or is it to have a retroactive effect? Inasmuch as the *Kelly* opinion (1) specifically sets forth the ruling made by the Supreme Court in the case of *People v Nawrocki, supra*, (2) the right to have a limiting

instruction is not predicated on a constitutional ground, and (3) absent a declaration in *Kelly* to the effect that *Nawrocki, supra,* was overruled, we are constrained to interpret *Kelly* as having prospective application only.

The instant trial was held on April 15 and 16, 1970, which was a considerable period of time before the *Kelly* decision and at a time when the *Nawrocki* rule was in full effect. Therefore, we determine that because defendant failed to request a limiting instruction and did not object to the court's failure to give such an instruction, which is required by GCR 1963, 516.1 and 516.2, there was no error.

In any event, we are satisfied that if we are in error as to the interpretation of *People* v *Kelly, supra,* that the error in failing to give a limiting instruction by the trial court was harmless. None of the details of the subsequent "incident" were gone into by the prosecution. We are convinced that the evidence which convicted the defendant of the crime charged was not only sufficient to convict beyond a reasonable doubt but also was overwhelming. This determination is made without repeating all the sordid facts of this case. Because the evidence was so overwhelming, we find that such error was harmless beyond a reasonable doubt. *People* v *Wardell,* 26 *Mich App* 69 (1970); *Chapman* v *California,* 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967).

Affirmed.

All concurred.